A. M. STEVENS LUMBER COMPANY, Appellants, v. KANSAS CITY LUMBER COMPANY, Respondent.

Kansas City Court of Appeals, November 22, 1897.

1. **Limitations**: REVERSAL OF JUDGMENT ON APPEAL: RES ADJUDICATA: NEW ACTION. The reversal of a judgment by an appellate court is not *res adjudicata* of the matters involved in the action, and a new action brought within one year thereafter will not be barred by the statute of limitations although commenced after the period prescribed for bringing an original action. (*Musser v. Harwood*, 23 Mo. App. 495, *disallowed*.)

2. **Mechanics' Liens**: FRAUDULENT DISPOSAL OF MATERIAL BY SUBCON-
TRACTOR: ACTION: CREDIT TO BUILDING. Under the Missouri me-
chanics' lien law the materialman furnishing material to a subcon-
tractor extends credit to the building, and the fraudulent disposal of
the material while in the hands of such subcontractor to a third party,
who puts the material in the building for which it was intended, can
not defeat the materialman's lien, and an action by such material-
man against the fraudulent transferee for defrauding him of his lien
will not lie.

*Appeal from the Jackson Circuit Court.*—HON. E. L.
SCARRITT, Judge.

AFFIRMED.

*N. F. Heitman* for appellants.

(1) "The vendor of personal property transfers
the title and interest therein, subject to liens recognized
by law." *Richardson v. Peterson*, 58 Iowa, *loc. cit.* 726.
The same principle applies to equitable liens and the
rights of the *cestui que trust* in trust property. This
building material was trust property. The relation of
trustee and *cestui que trust* existed between their sub-
contractor and the plaintiffs as to this material. R. S.
1889, sec. 6728; *Simmons v. Carrier*, 60 Mo. 581; *Cham-
berlain v. O'Brien*, 48 N. W. Rep. (Minn.) 447; Perry,
Trusts, sec. 843, 847; *Lathrop v. Bampton*, 31 Cal. 17;
*Mason v. Pierron*, 69 Wis. 594; 34 N. W. Rep. 921;
*Murtha v. Curley*, 90 N. Y. 372; *McLeod v. Bank*, 42
Miss. 113. (2) The inchoate right to develop a lien is
recognized by the courts. *Casey v. Ault*, 29 Pac. Rep.
*loc. cit.* 1048; *Howes v. Wire Works Co.*, 48 N. W.
Rep. (Minn.) 448; *Simar v. Canady*, 53 N. Y. 298;
*Buzich v. Buzich*, 44 Iowa, 259. (3) The transfer to de-
fendant was a fraud on the mechanic's lien law. *Mc-
Coy v. Spithill*, 13 Wash. *loc. cit.* 162; 1 Rapalje & L.
Law Dictionary, p. 547, sec. 15; *Ex parte Mackcey*,
L. R. 8 Ch. 643; *Lynch v. Cushman*, 3 E. D. Smith,

660; *Esslinger v. Huebner*, 22 Wis. *loc. cit.*, top page 604. (4) Our right to develop a lien on the land and building was real and substantial, and was defeated by defendant's wrong. Our damage was certain, and capable of legal estimation. We can prove beyond doubt that we were damaged to the extent of the purchase price of this building material. *Penrod v. Morrison*, 2 Penr. & W. 126; our case is much stronger than the above case. *Mott v. Danfaith*, 6 Watts, 304; *Adams v. Paige*, 7 Pick. 542; *Yates v. Joyce*, 11 Johns. R. 136; *Smith v. Tonstall*, Carth. (Eng.) 3; *Husted v. Ingram*, 75 N. Y. 251; *Coman v. Lakey*, 80 N. Y. 345; *Hovey v. Elliott*, 118 N. Y. *loc. cit.* 149; *Van Pelt v. McGraw*, 4 N. Y. 110, *loc. cit.* 114; *Manning v. Monaghan*, 23 N. Y. 544–552; *Field v. Mayor*, 2 Seld. 179; *Bank v. Roberts*, 45 Barb. 407; *Cromwell v. Ins. Co.*, 44 N. Y. 42; *Newton v. Porter*, 5 Lans. 416; *Bradly v. Woldron*, 2 Johns. Ch. 148; *Hubbard v. Stapp*, 32 Ill. App. 541; 49 N. W. Rep. 133. Above cases all pointedly illustrate the principle involved here. (5) The reversal is no bar. R. S. 1889, sec. 6784; Freeman on Judgments [3 Ed.], sec. 333, and authorities; also secs. 481–484; 2 Black on Judgments, secs. 511 and 683; *Bennings v. Mechart*, 56 Mo. App. *loc. cit.* 449, 450; *Crispen v. Hannovan*, 86 Mo. 167, 168; *Briant v. Fudge*, 63 Mo. 489; *Atkinson v. Dixon*, 96 Mo. 587; *Zurfluh v. R'y*, 46 Mo. App. 637, *loc. cit.* 643; *Houts v. Sheppard*, 79 Mo. 141; *State v. O'Gorman*, 75 Mo. *loc. cit.* 378; *Fries v. R'y*, 98 Pa. St. 142, is exactly in point, also *Napier v. Foster*, 80 Ala. 379; *Harris v. Dennis*, 1 S. & R. (Pa.) 236; *Young v. Davis*, 30 Ala. 213; *Artz v. R'y*, 38 Iowa, 293; s. c., 34 Iowa, 153; *Parker v. Harris*, 1 Salk. (Eng.) 262; *Clements v. Walker*, 4 Burr. 2156; *Swearinger v. Pendleton*, 4 S. & R. (Pa.) 396; *Stearn v. Aquirre*, 7 Cal. 448; *Phelan v. San Francisco*, 9 Cal. 16; *Laithe v. McDonald*, 7 Kan. 267, 268; 21 Am. and

Eng. Ency. of Law, p. 345; Anderson's Law Dictionary on the definition of *"venire facias de novo."* Wharton's Law Dictionary defines the word "reverse" as follows: "To undo, repeal, or make void." See Rapalje & Lawrence's definition of the word "reverse." Webster *sub* "reverse."

*J. T. Clayton* for respondent.

(1)   Our first contention is that this judgment of reversal without remanding is a finality, and forever settles all litigation on this question between these parties. *Musser v. Harwood,* 23 Mo. App. 495.   When suit is brought and judgment recovered upon a theory on which no action is maintainable, the appellate court will reverse the judgment without remanding the cause. *Quay v. Lucas,* 25 Mo. App. 4; *Jackson v. McCoy,* 50 Mo. 348; *McGee v. Laramon, Id.* 420; *Dunn v. R'y,* 21. Mo. App. 188–208; *Speak v. Ely-Walker Co.,* 22 Mo. App. 112. (2) Under the statute of Missouri in sale of personal property, vendor has no lien upon the same either in the hands of the vendee or any other person. *Straus v. Rothan,* 102 Mo. 26. (3) In this state no materialman is entitled to a mechanic's lien upon the building or property of the owner until the materials have actually entered into the construction of the building or improvement.   Until the materials are put into the actual construction of the building, and while still in the control and possession of the person owning them, they are liable to seizure on attachment or execution for the debt of the owner, and can be sold or used for the purpose of paying *bona fide* debts. *Simmons v. Currier,* 60 Mo. 581–585; R. S. 1889, sec. 6728; *Fitzpatrick v. Thomas,* 61 Mo. 516; *Schulenberg v. P. H. Institute,* 65 Mo. 295; *Deardorf v. Everhart,* 74 Mo. 37; Phillips on Mechanic's Lien

[2 Ed.], secs. 123, 124–127; *Weaver v. Sells*, 10 Kan. 609; *Delay v. Golden*, 17 Kan. 265; *Wagner v. Darby*, 49 Kan. 343; 2 Jones on Liens, sec. 1330; 42 Iowa, 187–190, 191. (4) In any view of the case the plaintiff had no right of lien, but a mere expectancy, which never became a reality, and therefore the disposal of the two carloads of lumber involved no right of the plaintiffs and caused them no legal injury. Upon this question see *Hutchins v. Hutchins*, 7 Hill (N. Y. C. L.), 104; Bigelow, Law of Frauds, p. 13, sec. 6; 1 Hill on Torts [3 Ed.], p. 92, chap. 3, sec. 76; *Carter Bros. & Co. v. Coleman*, 48 Ala. 256.

SMITH, P. J.—George E. Scott and others, partners, doing business under the name of the A. M. Stevens Lumber Company, brought this action against the defendant, a business corporation, to recover damages for fraud.

PETITION.

The petition is quite lengthy, covering some nine printed pages. We shall only here set forth the substance of so much thereof as we deem necessary to a correct understanding of the questions which we shall presently notice. It was among other things therein alleged that in the fall of 1889 the said Kansas City Planing Mill Company had a contract with one B. F. Jones to furnish all of the mill work for the Dr. Thorne Hotel, situated in Kansas City, which said building and the land on which it was built was owned by Dr. Thorne and Nancy V. Thorne, his wife; that said B. F. Jones was the original contractor with said owners for the erection of said building. That said Kansas City Planing Mill Company entered into a contract with the plaintiffs herein whereby the plaintiffs were to furnish for said building, according to the plans and specifications of the architect, a part of the mill

work required by said contract which said planing mill company had with said B. F. Jones.

In pursuance of said contract between plaintiffs and said planing mill company, the plaintiffs proceeded to manufacture the said mill work, which was required by said contract, and deliver the same on cars at Kansas City to said planing mill company, with a view and purpose that said planing mill company should proceed to deliver the same to said hotel building, for which it had been manufactured by plaintiffs, in pursuance of its contract with said plaintiffs, and cause said building material to be used in the construction of said building as said planing mill company was bound to do, under and by virtue of its said contract with said plaintiffs. That if said planing mill company had carried out its said contract with plaintiffs, and had proceeded to deliver said building material to said building, and had caused the same to be used in said building under and by virtue of its said contract with plaintiffs, plaintiffs would thereupon and on account thereof have become entitled to a special remedy under the mechanics' lien law, whereby plaintiffs could have collected their debt against said planing mill company, for the purchase price of said building material, notwithstanding the insolvency of said planing mill company, by filing and establishing according to law, a mechanics' lien, under the mechanics' lien law, on said building and the land on which it is situated. That when said material reached the possession of said planing mill company in its course from plaintiffs' mill into said building under the contracts aforesaid, said planing mill company had become, and was, insolvent, which fact of its having become insolvent was unknown to plaintiffs, but was known to said planing mill company and to the defendant at the time of the transac-

tion between said planing mill company and the defendant hereinafter referred to.

That said planing mill company thereupon did not deliver said building material to said building, and did not cause the same to be used in said building, as it was bound to do under the contract aforesaid, but instead thereof said planing mill company did, on or about the eighteenth of February, 1890, in bad faith toward the plaintiffs, and without plaintiffs' knowledge or consent, turn over and transfer said building material to the defendant, who was a general creditor of said planing mill company, in part payment of a preexisting debt, not yet due, which said planing mill company owed the defendant, and said planing mill company took credit therefor on said debt which it owed to the defendant.

That the defendant, knowing said planing mill company to be insolvent, and knowing that if said planing mill company had proceeded to deliver said material to said building and had caused the same to be used in said building, as defendant knew said planing mill company was bound to do under and by virtue of its said contract with the plaintiffs, that plaintiffs would thereupon and on that account have become entitled to a special remedy under the mechanics' lien law, whereby the defendant knew plaintiffs could have collected their debt against said planing mill company for the purchase price of said material, notwithstanding the insolvency of said planing mill company by filing and establishing according to law, a mechanics' lien on said building and the land on which it is situated, and knowing of the aforesaid profits which said planing mill company was about to make on said building material, and with a view to appropriate to itself said profit which had already been fixed and established by said insolvent planing mill company, to the injury

of plaintiffs, and with the intention of cheating and defrauding plaintiffs out of their special mechanics' lien remedy on which they relied at the time they sold and delivered said building material to said planing mill company, and defendant took said building material out of the possession of said planing mill company and into its possessson', and knew at the time it credited said material on its debt of said planing mill company's bad faith toward plaintiffs. Afterward, on March 10, 1890, said defendant did actually furnish and deliver said material from its yards to said building, and did receive payment therefor directly from the owners of said building, and did receive from said owners in payment therefor the sum of one thousand, three hundred and nine dollars and eleven cents ($1,309.11). That the owners of said building bought said material from said defendant, who was in possession thereof at the time, in good faith, and without any knowledge of the fact that plaintiffs ever had anything whatsoever to do with said planing mill company or with said material, and in entire ignorance of plaintiffs' relation with said planing mill company, or said material.

That the defendant did, with intent to cheat the plaintiffs out of their special mechanics' lien remedy for the purchase price of said material, conceal from the owners of said building the aforesaid facts of plaintiffs' connection with said building material, and with said planing mill company, and did conceal the aforesaid bad faith of said planing mill company toward plaintiffs.

That since the time, the plaintiffs have recovered a judgment against said planing mill company in the circuit court of Jackson county, Missouri, for the sum of $1,783.14, which said judgment of $1,783.14 included the amount due plaintiffs from said planing mill company on account of said building material. That the

plaintiffs have been unable to collect the aforesaid purchase price for said building material on account of the insolvency of the planing mill company.

That by the aforesaid wrongful conduct on the part of the defendant, the plaintiffs were injured in this, to wit: That they were thereby deprived of the aforesaid remedy under the mechanics' lien law, whereby they could have collected the purchase price of said building material, notwithstanding the insolvency of said planing mill company and by the loss of said special remedy through the wrong doing of defendant, plaintiffs have lost the purchase price of said building material, and interest thereon since it was demanded of said planing mill company.

Plaintiffs state that they obtained a judgment on the fifteenth day of April, 1891, in circuit court of Jackson county, Missouri, against said Kansas City Planing Mill Company for the sum of one thousand, seven hundred and eighty-three dollars and fourteen cents ($1,783.14). That they caused an execution to be duly issued on said judgment on the thirtieth day of April, 1891. That under said execution, the said defendant, the Kansas City Lumber Company, was duly summoned as garnishee. Interrogations were duly filed by the plaintiffs. That said garnishee answered the same, denying that it owed the Kansas City Planing Mill Company anything, or had any property belonging to it in its possession. That the plaintiffs filed a denial to the said answer of said garnishee in said case, and set up that the said garnishee in that case was a fraudulent transferee of the above described finishing material.

That the garnishee filed a reply to said denial, in which it denied that it was a fraudulent transferee of any assets of the defendant, admitting that it had the assets referred to in said denial, but claimed that said

assets were transferred to said garnishee in good faith. On said issue of fraud, or no fraud, on the part of the garnishee, a trial was had which resulted in a judgment for plaintiffs.

The garnishee appealed to this court, where on November 29, 1894, the judgment was reversed.

Plaintiffs state that one year after said reversal, to wit, on October 31, 1895, plaintiffs duly instituted this suit. Plaintiffs state that the cause of action on which said garnishment suit was founded was the fraudulent transfer of said finishing material and the participation in said fraudulent transfer by both the defendant company and the Kansas City Planing Mill Company.

Wherefore plaintiffs ask judgment against the defendants for $1,500 damages, etc.

The defendant interposed a demurrer to the said petition, assigning as the grounds therefor, *first*, that it was disclosed on the face thereof that the action was barred by the statute of limitation—more than five years having elapsed since the grievances complained had occurred; and *second*, that the petition did not state a cause of action. This was sustained and judgment given accordingly and plaintiff appealed.

We will consider the questions raised by the demurrer in the order in which they are therein presented.

The defendant contends that as the petition shows that the reversal of the judgment in the garnishment case by this court without remanding was a final determination of the cause and a complete bar to the present action. The defendant cites, in support of its contention, the case of *Musser v. Harwood*, 23 Mo. App. 495, where it is in effect said that the action of an appellate court reversing a judgment without re-

LIMITATIONS : reversal of judgment on appeal: res adjudicata: new action.

manding is not only a final determination of the cause, but a complete bar to another suit on the same cause of action. If the doctrine of this case is sound and not at variance with the provisions of the statute and the rulings of the supreme court, it must put an end to this controversy.

On turning to section 6784, Revised Statutes, we find that it is therein provided: "If any action shall be commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a non-suit, or after verdict for him, the judgment be arrested, or after judgment for him the *same be reversed on appeal or writ of error, such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed.*" It is thus seen that within a year after the reversal of a judgment the plaintiff may bring a new action. The same right is accorded the plaintiff in a case where his judgment is reversed as in case of nonsuit.

It was declared in *Berning v. Medart*, 56 Mo. App. 443, that the "reversal of judgment for plaintiff is equivalent to a nonsuit only, and the plaintiff still at liberty to substantiate his recovery in a new action." In *Zurfluh v. R'y*, 46 Mo. App. 636, it was held that a judgment simply of reversal is not an adjudication on the merits, but is equivalent to a nonsuit. It has been several times declared by the supreme court that when the plaintiff has suffered a nonsuit or a judgment in his favor has been reversed or arrested he may bring another suit within a year thereafter. *Briant v. Fudge*, 63 Mo. 489; *Shaw v. Pershing*, 57 Mo. 416; *Houts v. Shepherd*, 79 Mo. 141; *State v. O'Gorman*, 75 Mo. 371. And so it has been ruled by the same court that a judgment reversed becomes a mere nullity and there-after conferred no rights and no vitality for any pur-

pose. *Atkinson v. Dixon*, 96 Mo. 582; *Crispen v. Hannovan*, 86 Mo. 160.

In *Briant v. Fudge, ante,* Judge NORTON, after quoting the section quoted by us at the outset, declares that: "The intention of the legislature doubtless was to give a party who should commence his action within the time prescribed as a bar to his recovery, and had for any of the causes mentioned in the section failed to succeed in his suit or to obtain the benefit of a judgment, the right to renew or maintain a new action within the time specified." In Freeman on Judgments, section 333, it is stated that the reversal of a judgment is a complete extinguishment of the estoppel. And in section 481 of the same work it is stated that "the reversal of a judgment by any competent authority restores the parties litigant to the same condition in which they were prior to its rendition. The judgment reversed becomes mere waste paper and the parties to it are allowed to proceed in the court below to obtain a final determination of their rights in the same manner and to the same extent as if their cause had never been heard or decided by any court." And this statement of the law was referred to with approval in *Crispen v. Hannovan, ante.*

In Black on Judgments, section 511, it is stated that the reversal of a judgment will of course completely destroy its efficacy as an estoppel since it annuls the very thing which would have made the judgment conclusive, namely, the judicial affirmation that the resolution of the issue propounded was in such and such wise. And in section 683 of the same work it is further stated that the reversal of a judgment throws the whole matter open and destroys its effect as an estoppel; the judgment no longer effects a merger of the cause of action and it does not bar a second action on the

demand.    This doctrine is supported by a great number of adjudications cited by the author in foot note 44.

The rule to be extracted from the foregoing authorities is that the simple reversal of a judgment without remanding will destroy its effect as an estoppel and throw the whole matter open; restore the *statu quo ante bellum*.    And if the action was commenced within the period prescribed by the appropriate statute of limitations, the unsuccessful plaintiff may bring another action on his demand within a year after the reversal of his judgment, since such judgment is no bar thereto. We are unwilling to follow the rule declared in *Musser v. Harwood, ante,* in so far as the same is repugnant to that just stated.    The prototype of this case, as seen by reference to the allegations of the petition hereinbefore set forth, was brought within five years after the cause of action accrued, and since this was brought within one year after the reversal of the judgment in the former, we must therefore resolve the preliminary question previously stated against the defendant's contention.

This brings us face to face with the substantial and underlying question raised by the demurrer, viz., whether the petition states a cause of action.

Section 6705, article 1, chapter 102, Revised Statutes, provides that every person who shall furnish any material for any building, erection or improvement upon land under a contract with the owner or proprietor thereof or his agent, trustee, contractor or subcontractor, upon complying with the provisions of said article shall have for his materials furnished a lien upon such building, erection or improvement and upon the land belonging to such owner or proprietor on which the same are situate to the extent of an acre.    This section has been construed to give a lien only where

MECHANICS' liens: fraudulent disposal of material by subcontractor: action: credit to building.

the material actually enters into the construction of the building sought to be charged therewith. *Simmons v. Carrier*, 60 Mo. 581; *Fitzpatrick v. Thomas*, 61 Mo. 515; *Schulenberg v. Prairie Home Inst.*, 65 Mo. 295; *Deardorff v. Everhardt*, 74 Mo. 37. The supreme court of Iowa, in construing an analogous statute of that state, held that it gave no lien upon the materials themselves and that the lien attached only to the building, erection or improvement made with the materials and the land on which the same was situated. *Heaton v. Horr*, 42 Iowa, 187.

It is settled by the cases cited from our own reports in the preceding paragraph that a subcontractor can have no lien against the owner unless the materials were purchased to be used in the building, erection or improvement, and were so used. The legislature by the enactment of the statute (art. 1, chap. 102, *supra*) thereby established the principle that labor and materials are to be considered as having been furnished on the credit of the building and not on that of the contractor. This rule does not bear hard on the owner. He has it in his power to detain the price of the building while there are outstanding charges against it, or to stipulate for security against those that may afterward turn up; and if he use common prudence any loss which occurs will eventually fall on the author of it. If he does not he can not charge the mechanic or materialman with the consequences of his own imprudence.

The materials were furnished on the credit of the building and not on that of the contractor. The law presumes that a materialman relies on the lien given by the statute for his benefit. *McAdow v. Strutevant*, 41 Mo. App. 220; Jones on Liens, sec. 1284. The title to the material was vested by the delivery to the subcontractor not in him, but in the owner of the building, subject only to the re-vindication of the seller. The

ownership of it between the time of delivery and the working of it into the building could not be in the subcontractor because it was not delivered to him on his own credit but on that of the building to which it was destined. It was sold for the building and consequently to the owner of it. The ownership had passed by the delivery and the building had become debtor for the price. If a subcontractor embezzle materials while the building is in progress it is the business of the owner to look to that. *Phillips on Liens*, sec. 152; *White v. Miller*, 18 Pa. St. 52.

It will be observed that under the provisions of our statute, already referred to, the subcontractor is placed on the same footing as the contractor in respect to his power to purchase material on the credit of the building to be wrought therein. It appears from the allegations of the plaintiffs' petition that the materials furnished for the Thorne building under a contract with the Kansas City Planing Mill, the subcontractor to be wrought into that building and that the same were so wrought. It does not seem to be of any consequence that the subcontractor, to whom the materials were delivered, sold them to the defendant, who later on sold them to the owner of the building. The plaintiffs were no party to these latter transactions, nor were they concerned in the same.

The materials went into the construction of the building. When this took place the two fundamental conditions which were required by statute to authorize the lien were brought into existence. If the subcontractor embezzled the materials or turned them over to the defendant in payment of a debt, fictitious or otherwise, this could not affect the plaintiffs' rights to a lien, and especially so since it was wrought into the building for which it was destined.

The transaction between the subcontractor and the

defendant, though brought about by a fraudulent intent to defeat the plaintiffs' right to perfect their lien, could have no such effect, for the plaintiff, in spite of such transaction, could still have complied with the requirements of the statute by filing their lien paper, and thus have secured their lien. The plaintiffs were not prevented by the fraudulent transaction from proceeding. If they had an inchoate right to a lien, why did they not develop it? There was nothing in their way. If they did not do so they have only themselves to blame.

It is thus seen that the alleged fraudulent action of the subcontractor and the defendant infringed no legal right of the plaintiffs. The latter had the same rights after the alleged fraud that they did before its perpetration. It is elementary law that damages can not be recovered for fraud unless it be shown that injury resulted therefrom. 1 Hilliard on Torts, 76; 1 Bigelow on Frauds, 13, 14; *Hutchins v. Hutchins,* 7 Hill (N. Y.), 104.

It follows therefore that if all the facts stated in the petition are taken as true for the purpose of considering the demurrer, still the same are not sufficient to constitute a cause of action. The judgment will be affirmed. All concur.