JOHN S. MANN v. BERNARD CORRIGAN, *et al.*

1. LANGUAGE OF STATUTE, *Quoted in Petition; Presumption.* Where a party's cause of action is given by a statute, and he quotes in his petition the language of that statute, and then uses the same words in describing his cause of action, it must be presumed that he so uses the words in the same sense that they are used in the statute; and it is unnecessary for him to allege specifically that he does not use them in a different or broader sense than that they have in the statute.

2. LABORERS *on Railroads.* Laborers and mechanics employed by a sub-contractor in the building of a railroad are within the protection of § 35, ch. 84, Comp. Laws of 1879, and if the railroad company fails to take the bond required by such section, may maintain their action against it.

*Error from Cowley District Court.*

ACTION brought by *Mann* against *Corrigan* and the *Southern Kansas & Western Railroad Company,* to recover $301.90 for work done in the construction of the railroad of said company. May 10, 1881, the district court sustained a demurrer to plaintiff's petition, which ruling *Mann* brings here. The opinion states the facts.

*Webb & Sowers,* for plaintiff in error.

*Hackney & McDonald,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This case comes to us on error from the ruling of the district court of Cowley county, sustaining a demurrer to plaintiff's petition.

The plaintiff sought to charge the railroad company for failing to take the bond required by § 35, ch. 84, Comp. Laws of 1879. Counsel for defendant in error claim that the ruling of the district court must be sustained on two grounds: First, because it is not affirmatively shown that the labor on account of which this action is brought is of a kind within the protection of the statute; and second, because the employés of a sub-contractor are not within the statute. The bond required by the statute is to be conditioned to pay all laborers, mechanics and material-men. In the case of *Railroad Company v. Baker*, 14 Kas. 563, we held that a time-keeper and superintendent was not a laborer within the scope of the statute; that that term refers to those engaged in manual labor in accordance with its common acceptation. From this it is argued that the petition should affirmatively state that the services sued for are those of a manual laborer. We think the objection is not well taken. The petition, after alleging the contract, the sub-contract, and that the railroad company failed to take a bond conditioned for the payment of all laborers, mechanics and material-men, alleged that the contractor "drew certain orders in favor of the laborers . . ; that said orders were drawn for work done by the payees named in said orders respectively in and about the road of defendant;" and again, "that said orders were given for labor performed by the persons named as payees therein respectively on the road of defendant." The orders themselves, copies of which are attached to the petition, on their face (many of them at least) recite that they are given on labor account. One or two are even more specific, as for instance the sixty-third, which reads: "Jerry Curtis has worked 14.1 days in the month of November, as a laborer, at $1.25 per day." Now when a party copies in his petition the words of a stat-

ute upon which he bases his cause of action, and then in describing such cause of action uses the same words, it must be presumed that they are used in the same sense in the one case as in the other, and this notwithstanding the words may sometimes be used in a broader sense than is contemplated in the statute. Thus the statute names laborers; he quotes from the statute, and then alleges that he sues for the services of laborers. Obviously, the only fair construction is to give the term laborer the same construction wherever used in the single pleading. Counsel contend that in an action given wholly by statute, every probative fact must be clearly and affirmatively pleaded. But this does not require that the pleader, when he uses the language of the statute, shall further allege that he uses this language in the same sense that it is used in the statute, and that he means to exclude any broader meaning which the term sometimes has. The very fact that suing under the statute he uses the language, is an affirmation that he uses that language in the same sense that it is used in the statute.

*Second.* The other contention of counsel is equally untenable. The construction claimed by counsel would practically destroy the statute. So much of the work in constructing railroads is done under sub-contracts, that if only the laborers and mechanics directly employed by the contractor are within its protection, very few would be benefited by the statute. We had occasion to examine this section in the case of *Wells v. Mehl,* 25 Kas. 205, and it was only with some hesitation that we there reached the conclusion that persons furnishing provisions and supplies to sub-contractors are not within its protection. The statute is entitled: "An act to protect laborers, mechanics and others in the construction of railroads;" and the condition of the bond required is, that the contractor "shall pay all laborers, mechanics and material-men, and persons who supply such contractor with provisions or goods of any kind." Now in the case last cited, we held that the words "and persons who supply such contractor," etc., constitute a separate clause, of themselves a complete *descriptio*

*personarum.* Leaving those words out as of themselves constituting a separate and independent clause, and there is a bond conditioned to pay *all laborers, mechanics and material-men.* The only fair and reasonable limitation to be placed upon the words *all laborers,* etc., is the limitation imposed by the work which is to be accomplished, to wit, the construction of the railroad. If a sub-contractor's employés are not within its terms, it would be a very easy matter in the building of any railroad to avoid the statute entirely, and the evil which was designed to be remedied by this, would continue the same as before. In the case last cited, we said: "The bond binds the contractor to pay for all labor done upon and materials used in the construction of the road, so far as his contract with the company calls for labor and materials, no matter how many sub-contracts therefor may be made. In this respect it is a *quasi* mechanics-lien law, the lien being upon the bond instead of upon the road."

The authorities cited in that opinion support this construction, and it gives substantial force and value to the statute. They hold that the word "contractor," as used in a somewhat similar statute, includes sub-contractors as well as the immediate and principal contractor. We cannot agree with counsel that this construction renders the statute obnoxious to the objection that it is in conflict with § 17 of article 2, which provides that "All laws of a general nature shall have a uniform operation throughout the state." In support of that view they cite three authorities: *McAunich v. Rld. Co.,* 20 Iowa 338; *Deppe v. Rld. Co.,* 36 Iowa, 55; Cooley's Const. Lim. 90. As we read these authorities, they uphold rather than make against the statute, even as we construe it. In the two cases from Iowa a statute was upheld which made the railroad company liable to one of its employés for injuries caused by the neglect of another, although the same rule did not obtain in cases of ordinary employment, the court holding that the particularly hazardous nature of railroad operations justified different legislation in respect to the liability of the company. Now the particular point of

counsel's criticism is that this statute fails to provide for any notice by the laborer to the company, and specifies no period of limitation within which the company can safely pay its contractor, and this while the general mechanics-lien law provides that notice must be given, and that within a short period of time. They say that the company may pay the contractor, the contractor may pay the sub-contractor, and long after such payment, at any time indeed within the statute of limitations, some employé of such sub-contractor may enforce his claim against the company or the contractor. This they contend prevents that law from having uniform operation throughout the state.

It may be conceded that the law is a stringent one, but the experience which has been had throughout the country in the building of railroads justifies the use of stringent means to prevent irresponsible contractors from engaging in the building of railroads and defrauding the men whose labor and material go into the construction of the road. Yet, while the law is stringent, its operation is uniform. Territorially it extends and has operation throughout the state; it reaches to all railroads and all parties engaged in building railroads, and is uniform in its application to them. The difference which exists in the very nature of things justifies a different lien law from that applying to ordinary buildings. The road is often many miles in length, extending through many counties and requiring years for its completion. To apply to such a work the same limitations and the same proceedings as are reasonable and just when applied to a single building, which is generally completed within a comparatively short time, and where all parties in interest are located in the same neighborhood, would give to the laborer on the railroad a remedy of most doubtful value. This very difference in the nature of things justifies, if it does not compel, a different proceeding in order to secure an adequate remedy; nor is the remedy as provided, however stringent, one that can be pronounced harsh and unjust. A railroad company can always protect itself by taking the statutory bond, and in this it occupies

the same position as it does in reference to the statute of 1874 in respect to the killing of stock. It can guard against liability under that statute by fencing its road, and this as a precautionary measure it owes, not only to the adjacent farmers, but also to its own passengers.

Again, the contractor by his contract engages to do the work, and he ought to see that the men who perform the labor and furnish material are paid. If he chooses to sub-let, he can protect himself by taking a bond from his sub-contractor; and if he prefers to make his money out of the contract by sub-letting it and so doing none of the work himself, it is no more than fair to the laborers, mechanics and materialmen, that he take suitable measures to protect them in their pay.

Still again, while the general mechanics-lien law gives but a brief space of time in which to notify the owner, the legislature has the power, if it deems best, to enlarge such time; it might even make it coëxtensive with the statute of limitations, and that is in effect what it has done in respect to this lien law. The commencing of an action is notice, and if the legislature in a general mechanics-lien law may provide that notice may be given at any time within three years, it can also say that an action can be commenced within three years, which of itself is notice. In conclusion, without going further into a discussion of this question, we may remark that the statute is a remedial one, and while not to be extended beyond the fair import of its terms, is to be construed so that it will furnish a remedy and protect those whom it was intended to protect. The ruling of the district court was wrong, and its judgment will be reversed, and the case remanded with instructions to overrule the demurrer.

All the Justices concurring.