LOHR & TRAPNELL et al. v. H. W. JOHNS-MANVILLE CO. et al.

No. 6435—Opinion Filed Oct. 28, 1919.

Rehearing Denied Dec. 9, 1919.

(Syllabus by the Court.)

1. **Principal and Surety—Public Building Contracts—Bond—Sufficiency.**

Under sections 3881, 3882, Rev. Laws 1910, which require public officers upon entering into contracts to take bonds running to "the state of Oklahoma," requiring the contractor to pay for all labor and material in the building and permitting suit on the bond to be brought by any one who furnishes labor or material, a bond which runs to the board of education of the city instead of the state of Oklahoma is a valid compliance with the statute.

2. **Same—Claims Protected by Bond.**

Materials used in the construction of a public work, whether furnished under the contract directly to the contractor or to a sub-contractor of a sub-contractor to the contractor, must be deemed within the obligation of the surety company under a bond executed pursuant to sections 3881, 3882, Rev. Laws 1910, conditioned that the contractor make payments to the parties furnishing the same for all materials used in the work provided for in the contract and all labor performed on such work, whether by sub-contractors or otherwise, in view of the manifest purpose of that statute to protect those whose labor or material has contributed to the prosecution of the work.

Error from Superior Court, Muskogee County; Farrar L. McCain, Judge.

Action by the H. W. Johns-Manville Company against Lohr & Srapnell and others. From judgment for plaintiffs, the defendants bring error. Affirmed.

See 64 Okla. —, 166 Pac. 124.

C. G. Hornor and John D. Chappelle, for Lohr & Trapnell and L. W. Baxter.

Benj. and Villard Martin, for The Texas Bldg. Co.

E. C. Stanard, J. H. Wahl, and C. H. Ennis, for Southern Surety Co.

Wm. O. Beall and John H. Mosier, for defendants in error.

JOHNSON, J. This action was commenced in the superior court of Muskogee county, December 3, 1910, against Lohr & Trapnell, a copartnership, the Texas Building Company, a corporation, the Southern Surety Company, a corporation, and the board of education of the city of Muskogee, to recover for certain plumbing, heating, water connections, material and fixtures used by the Texas Building Company in the construction of a high school building in the city of Muskogee as per contract with the board of education of said city. The Texas Building Company sublet a part of the construction work to said Lohr & Trapnell, to wit, the plumbing, installation of heating plant, water pipes, sewer connections, fittings, etc. At the time of the filing of this suit, there remained due and payable to the defendant in error (hereafter called plaintiff) the sum of $755.04 for material that went into the building in accordance with the contract of the Texas Building Company to erect and complete the high school building.

This action is upon the bond of the Texas Building Company and the Southern Surety Company as surety in the sum of $50,000.00.

The case was tried in the fall of 1913 before the judge of the superior court of Muskogee, a jury having been waived, and after the plaintiff had introduced its evidence and rested its case, all the defendants, including the Southern Surety Company, filed a demurrer to the evidence. The court overruled the demurrer, and all the defendants, including the Southern Surety Company, stood upon their demurrer, refused to plead further or to introduce any testimony. Whereupon, on the 13th day of November, 1913, the court found for the plaintiff and against all of the defendants, including the Southern Surety Company, and rendered judgment in favor of said plaintiff and against each and all of said defendants in the sum of $755.04, together with interest thereon and costs of suit, from which said judgment the defendant the Southern Surety Company prayed an appeal to this court, and brings the case here for review.

There are three separate and distinct obligations in the bond.

First. "The payment to the board of education of the city of Muskogee of all sums of money which it may pay to other persons on account of work or labor done or material furnished."

Second. "The payment to the board of education of the city of Muskogee for all damages it may sustain by reason of the non-performance on the part of the Texas Building Company of any of the covenants, conditions, stipulations or agreements in the contract of June 14, 1909, between the Texas Building Company and the board of education of the city of Muskogee, including all alterations, modifications and additions as set forth in the contract."

Third. "The payment to the parties furnishing the same for all materials used in the work provided for in the said contract and specifications * * * and for all labor performed on such work whether by sub-contractor or otherwise."

It is under the latter provision that plaintiff seeks to hold the surety company liable.

The defendant in error, the H. W. Johns-Manville Company, a corporation, in support of its petition, offered in evidence the contract entered into between the Texas Building Company and the board of education of the city of Muskogee and the bond signed by the said Texas Building Company, to the board of education of the city of Muskogee with the Southern Surety Company thereon as surety, and introduced by depositions and by witnesses in court, evidence showing that it had sold and delivered to Lohr & Trapnell, a copartnership, the plumbing material and plumber's supplies as alleged in its petition; that said material thus furnished Lohr & Trapnell was of the value of $765.04, that it had never received any payment upon said amount with the exception of ten dollars ($10.00), and that all of said material thus furnished by it to Lohr & Trapnell had gone into the construction of the high school building in the city of Muskogee, as covered by the contract and bond theretofore introduced—and rested its case.

The defendants, and especially the Southern Surety Company, introduced no testimony, but elicited from the witnesses for the defendant in error, H. W. Johns-Manville Company, that it furnished said material here sued for as a sub-contractor to Lohr & Trapnell, who were sub-contractors under the Texas Building Company, who was the original contractor with the board of education of the city of Muskogee, to erect said building; and, furthermore, established by said witnesses that the firm of Lohr & Trapnell, at the time they took the sub-contract from the Texas Building Company, entered into a bond to said company to protect all parties who should furnish labor and mate-

rial in the construction of said building. This evidence was obtained by admissions of the witnesses for the H. W. Johns-Manville Company on cross-examination.

The plaintiffs in error's assignments of error are:

1. Said court erred in overruling the motions of the plaintiffs in error for a new trial.

2. Said court erred in overruling the motion of L. W. Baxter, as trustee, to dismiss this cause for want of jurisdiction of the court.

3. The said court erred in overruling defendants' objection to the introduction of any evidence, on the ground that the petition did not state facts sufficient to constitute a cause of action.

4. Said court erred in overruling the several demurrers of the defendants to plaintiff's evidence at the close of plaintiff's testimony.

5. Said court erred in admitting evidence on the part of the defendant in error, H. W. Johns-Manville Company.

6. Said court erred in rendering judgment in favor of the plaintiff and against all of the defendants, except the board of education of the city of Muskogee, state of Oklahoma.

But counsel, in their brief, say:

"The plaintiff in error, the Southern Surety Company, in presenting this case, desires to present all the assignments of error as stated above with the exception of assignment number two, which is not pertinent to our defense, and inasmuch as all the other assignments of error pertain to the same issue, for the sake of brevity we shall present them altogether under two divisions:

"First. Is the bond signed by the Southern Surety Company as surety, upon which judgment was rendered against this plaintiff in error, a statutory bond as required by section 3881, Rev. Laws of Okla., 1910?

"Second. If said bond is not a statutory bond as required in section 3881, Rev. Laws of Okla., 1910, is the same good as a common law bond, and is the plaintiff in error, Southern Surety Company, liable upon said bond to the H. W. Johns-Manville Company for material which it furnished in the construction of the high school building at Muskogee, Oklahoma, which it sold to Lohr & Trapnell, sub-contractors, under the terms of said bond? We maintain that a statutory bond as required by section 3881, Rev. Laws of Okla., 1910, made by a contractor to a board of education, is not liable for material furnished by a sub-contractor of a sub-contrac-

tor of such contractor, and is not any more comprehensive, and will not protect laborers or material men to any further extent than said laborers or material men would be protected by a mechanic's or materialmen's lien if the same was furnished upon buildings of private individuals."

With this contention of counsel we cannot agree, as this contention places a construction upon the section of the statute referred to that, in our opinion, would be too narrow and one that was not intended by the Legislature. The statute reads:

"Whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars with any person or persons, for purpose of making any public improvements, or constructing any public buildings or making repairs on the same, such officer shall take from the party contracted with, a bond with good and sufficient sureties to the state of Oklahoma, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public buildings or in making said public improvements."

Section 3882:

"Such bond shall be filed in the office of the clerk of the district court of the county in which such public improvement is to be made or such public building is to be erected, and any person to whom there is due any sum for labor or material furnished as stated in the preceding section, or his assigns, may bring an action on said bond for the recovery of said indebtedness, provided that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings."

It is perfectly clear to us that the statute by its terms does not, as contended by counsel, "limit or restrict the provision thereof to protect laborers or material men to any further extent than they would be protected by a mechanic's or materialmen's lien if the same was furnished upon buildings of private individuals." But, on the contrary, it is clear to us that it was the intent of the Legislature to protect all people who furnish labor and material in the construction of public buildings, and even where it is impossible to file a material or laboringman's lien upon said property.

It seems to us that if this contention of counsel could be maintained the statute would be robbed of a fundamental purpose, to wit, to save the public from all liability for liens for material or labor furnished on public buildings. The question of whether one, under similar circumstances, would be entitled

to a lien on private buildings is not, therefore, determinative of the issue here.

The bond given, pursuant to the statute, for public works requires that the contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of public buildings and in making public improvements.

A similar question arose in Kansas, in an action upon a bond given by contractors for the construction of a railroad under a law of that state and conditioned similarly to the bond here under consideration. And Brewer, J., said:

"The statute is entitled, an act to protect laborers, mechanics and others in the construction of railroads, and the condition of the bond required is that the contractor shall pay all laborers, mechanics, and material men and all persons who supply such contractor with provisions or goods of any kind. The only fair and reasonable limitation to be placed upon the words, 'all laborers, etc.,' is the limitation imposed by the work which has to be accomplished, to wit, the construction of a railroad. If a subcontractor's employees are not within its terms, it would be a very easy matter in the building of a railroad to avoid the statute entirely, and the evil which was designed to be remedied by this would continue the same as before. The bond binds the contractor to pay for all labor done and the material used in the construction of the road so far as his contract with the company calls for labor and material no matter how many sub-contracts therefor may be made. In this respect it is a quasi mechanic's lien law, the lien being upon the bond instead of upon the road." John S. Mann v. Bernard Corrigan et al., 28 Kan. 195.

The Supreme Court of Washington, in the case of Gilmore v. Westerman et al., 43 Pac. 345, construing the statute of that state similar to ours, speaking through Anders, J., said:

"Were appellant's assignors within the statute and entitled to sue upon the bond? In our opinion it cannot hardly be questioned that they were material men, in fact it seems to be conceded by the learned counsel for respondents that they might be considered such, but they insist that, if they were, they were material men in the second degree only, therefore neither contemplated by the statute nor secured by the bond. The bond, however, shows on its face that it was given to secure the payment of all just debts due material men incurred in constructing this bridge. It is admitted that the material was furnished to the contractors; that it was used by them in constructing the bridge, and that they have not paid for it, and how, then, can it be successfully

maintained that respondents would not have been liable therefor to the Parker Lumber Co.?"

The Supreme Court of the United States has likewise passed upon this question in the case of U. S. v. American Surety Co., of N. Y., 200 U. S. 197, 50 Law Ed. 441, and, in construing an act of Congress upon the same subject, said:

"The source of labor or material is not indicated or circumscribed. It is only required to be supplied to the contractor in the prosecution of the work provided for. How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished. If a construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure, will not be paid for, owing to the default of sub-contractors, and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated. We cannot conceive that this construction is any hardship to the surety. The contractor gets the benefit of such work and material. In view of the declared purpose of the statute in the light of which this bond must be read, and considering that the act declares in terms the purpose to protect those who have furnished labor and material in the prosecution of the work, we think it would be giving too narrow a construction to its terms to limit its benefits to those only who supply such labor and material directly to the contractor. The obligation is to make full payments to all persons supplying it with labor and materials in the prosecution of the work provided for in said contract. This language, read in the light of the statute, looks to the protection of those who supply the labor and material provided for in the contract and not to the particular contract or engagement under which the labor or materials were supplied. If the contractor sees fit to let the work to a sub-contractor, who employs labor and buys materials which was used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials. We reach the conclusion that the labor and materials furnished in this case were within the obligation of the surety of the company on the bond."

Counsel for plaintiffs in error say in their brief that:

"If the bond in question is a statutory bond, then the particular or peculiar wording of such bond is of not so much importance, and

the mistake in the name of the obligee is of little importance. But if the bond is a common-law bond, then the wording becomes very material, as it defines the rights of the parties therein without the aid of any statute being read into it."

In the case of Thompson v. Grider Implement Co. et al., 36 Okla. 165, 128 Pac. 267, this court construed the sections of the statutes, supra, where the facts, so far as the designation of the obligee is concerned, were very similar to the facts in the instant case. The facts in that case, as recited in the opinion were:

"One T. J. Walker entered into a contract with the trustees of school district No. 31 of Atoka county for the construction of a school building for the district. He executed a bond with the defendant and one J. E. Early as sureties. The obligees named in the bond were the 'trustees of the 31st school district of Atoka county.' The condition of the bond was that if the said principal should well and truly perform the conditions of the contract and hold the obligees free and harmless from all claims, demands, and liens arising out of the construction of the building, then the bond should be void."

The defendants attacked the validity of the bond. The court below rendered a judgment in favor of the plaintiff. This court affirmed the judgment on appeal. Ames, C., rendering the opinion, said:

"It will be observed from these sections, that the bond should run 'to the state of Oklahoma,' and that suit may be brought by any persons to whom there is due any sum for labor or material. If, therefore, this is the bond contemplated by these statutes, the plaintiff had the right to maintain the action upon it. It is insisted by the defendant that it is not a statutory bond, because the obligee is not the state of Oklahoma, as required by statute, but the trustees of the school district. It is clear that the statute required the bond, that the bond was given as contemplated by the statute, and the only question is whether in such a bond the state must be named the obligee, in order to bring it within the terms of the statute. This question is fully answered by the decision of the Supreme Court of Washington, in Ihrig v. Scott, 5 Wash. 584, 32 Pac. 466, where it is said:

" 'It will be seen that, by the objection thus made, defendants attacked said bond upon two grounds: First, that the state of Washington was not named as obligee; and, second, that it did not sufficiently appear that the bond was executed under the provisions of the act above referred to. That a mistake in the naming of the obligee is not a fatal defect, in a bond which is executed pursuant to the requirements of a statute, in the interests of the public, when, notwithstanding such error, it clearly appears from the bond taken as a whole that it was intended to be such a one as required by the statute, is fully established by the authorities. See State v. Wood, 51 Ark. 205, 10 S. W. 624; Bay County v. Brook, 44 Mich. 45, 6 N. W. 101. The simple fact, then, of the want of the proper obligee in this bond is not fatal to it, if, from its terms. the object for which it is executed appears. Even a superficial examination will show such to be the fact. No one can read the bond, in the light above referred to, without at once coming to the conclusion that in executing it by the principal and sureties, and the acceptance thereof by the proper officers of the school district, there was an intention on the part of all to provide the security required by said statute, in the interest of such as might thereafter, by virtue thereof, become entitled to protection.' "

Dolese Bros. Co. v. Chaney and Rickard et al., 44 Okla. 745, 145 Pac. 1119; Southern Surety Co. v. Waits, 45 Okla. 513, 146 Pac. 431.

We think this case comes within the rule announced in the foregoing authorities, and that, as was said by the learned commissioner, in the case of Thompson v. Grider Implement Co., supra, that the bond in the instant case, as well as the bond in that case, is the bond contemplated by this statute, and the plaintiff had the right to maintain the action upon it; that the statute required a bond; that the bond was given as contemplated by the statute, and if so the plaintiff had the right to maintain his action upon the bond, and that no assignment thereof was necessary in order to the maintenance of such action, and as there is no dispute in the evidence as to the plaintiff's right to recover the amount of his claim, the trial court, therefore, committed no error in rendering judgment for the plaintiff. The judgment of the trial court is therefore affirmed.

OWEN, C. J., and KANE, RAINEY, and McNEILL, JJ., concur.