**AMERMAN et al. v. STATE, for the use of BROMIDE CRUSHED ROCK CO.**

No. 15467—Opinion Filed June 16, 1925.

Rehearing Denied Sept. 8, 1925.

**1. Dismissal — Cross-Petition Against Co-defendant Unaffected.**

Where a defendant files a cross-petition against a codefendant, his right to have such cross-petition tried is not affected by the dismissal of the petition by the plaintiff as to such codefendant.

**2. States—Liability on Highway Contractor's Bond — Labor and Material Furnished.**

Material used in the construction of a public work, whether furnished under the contract directly to the contractor or to a subcontractor, must be deemed within the obligation of the surety company under a bond executed pursuant to sections 7486, 7487, Comp. St. 1921, conditioned that the contractor make payments to the parties furnishing the same for all materials used in the work provided for in the contract, and all labor performed on such work, whether by subcontractors or otherwise, in view of the manifest purpose of the statute to protect those whose labor or material has contributed to the prosecution of the work.

**3. Trial—Direction of Verdict—When Proper.**

The court may direct the jury to return a verdict where the undisputed facts are of such conclusive character that the court in its sound judicial discretion would be compelled to set aside the verdict returned in opposition to it.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court. Muskogee County; Enloe V. Vernor, Judge.

Action by Bromide Crushed Rock Company, as the beneficial plaintiff, against M. R. Amerman and Globe Indemnity Company. From judgment for plaintiff, defendants bring error. Affirmed.

G. A. Paul and A. Gray Gilmer, for plaintiffs in error.

Jones & Randolph, for defendant in error.

Opinion by PINKHAM, C. The defendant in error, Bromide Crushed Rock Company, a corporation, as the beneficial plaintiff, instituted this action against M. R. Amerman and Globe Indemnity Company, a corporation, for the recovery of the sum of $2,043.92, alleged to be due the defendant in error.

The parties will be referred to as they appeared in the trial court.

The material facts necessary to a proper understanding of the controversy in this case are as follows:

On the 1st day of December, 1921, the state of Oklahoma, by and through the Highway Commissioner, entered into a contract in writing with the defendant, M. R. Amermen, whereby the state of Oklahoma contracted with the said Amerman for the consideration and upon the terms and conditions therein set forth for the construction of 11.81 miles of highway in Okmulgee county, said Amerman to do all work and furnish materials, labor, tools, supplies, etc.

On the same date the said Amerman executed a statutory bond as required by law to the state of Oklahoma in the penal sum of $412, 829.49, with the defendant, Globe Indemnity Company, a corporation, as surety thereon, the condition of which bond was that if the said M. R. Amerman did "well and truly pay all indebtedness incurred for all labor and material furnished in the construction of said road, * * *" then the said bond was to become null and void; otherwise to remain in full force and effect.

Thereafter, on May 5, 1922, the said M. R. Amerman entered into a contract with Fuller & Company, a copartnership, composed of James G. Fuller and William Fuller, whereby he assigned and set over to said copartnership the construction of six miles of said road project and which contract was approved by the Commissioner of Highways on May 9, 1922.

On the same date, to wit, May 5, 1922, the said M. R. Amerman made, executed, and delivered to Fuller & Company, a certain other contract whereby he assigned, sold, and set over to said Fuller & Company all estimates that might be allowed and all moneys that were due or that might thereafter become due to him on estimates of "work, labor, and material due or furnished on six miles of said improvement adjacent to Henryetta, Okla.," which contract was accepted by the State Highway Commissioner.

Thereafter Fuller & Company proceeded with the work of constructing that portion of the highway described in said contracts, in course of which Fuller & Company became indebted to the plaintiff for crushed rock in the total sum of $3,508.54, upon which indebtedness Fuller & Company had paid the sum of $1,464.42, leaving a balance due to the plaintiff of $2,043.92, which is the amount involved in this action and for the recovery of which this suit was instituted.

After the introduction of all the evidence on behalf of plaintiff, the defendants filed joint and separate demurrers thereto. These demurrers were overruled and thereafter the defendants moved for an instructed verdict, as did the plaintiff. The court thereupon denied the motion of defendants and sustained that of the plaintiff, and the verdict was thereupon rendered in accordance with the court's peremptory instruction in favor of plaintiff and against the defendants.

Judgment was rendered in favor of the plaintiff against the defendants, M. R. Amerman and Globe Indemnity Company, for the sum of $2,043.96, with interest and costs of the action.

For reversal of the judgment defendants contend: First, that the trial court erred in permitting the plaintiff to dismiss the action against one of the original defendants, Fuller & Company.

In plaintiff's original petition Fuller & Company, a corporation, was made a party defendant, but service of process was never had on it. Subsequently, it developed that service could not be had because, in fact, no such corporation was in existence. Fuller & Company was, therefore, never, at any time, in court.

In the amended petition upon which the case was tried, Fuller & Company was not made a party defendant and before the trial of the case the plaintiff dismissed the action as to Fuller & Company.

The plaintiff's cause of action was on a statutory bond. The parties to that bond, M. R. Amerman, the contractor and principal in the bond, and the said surety, the Globe Indemnity Company, were made parties defendant.

There was, therefore, no necessity of joining Fuller & Company in the suit on the statutory bond because Fuller & Company was either a subcontractor under Amerman, as contended by the plaintiff, or, as contended by the defendants, Amerman's assignee.

Furthermore, the rights of the defendants, Amerman and the surety company, were not prejudiced by the dismissal of the case against Fuller & Company, for the reason that the dismissal could not affect the right of the other defendants, if they had pending, as claimed by them, a cross-petition against Fuller & Company.

"Where a defendant files a cross-petition against a codefendant his right to have such cross-petition tried is not affected by the dismissal of the petition by the plaintiff as to

such codefendant." Kolp et al. v. Parsons, 50 Okla. 372, 150 Pac. 1043.

It is contended that to hold that after this assignment was made by both parties to the original contract, parties furnishing material for the contract of that portion of the highway covered by the assignment can recover the price of such material from the surety on the Amerman bond is to hold that without knowledge, consent, or approval of the surety, Globe Indemnity Company, it can be forced into a contract of suretyship for people of whom, so far as the record discloses, it never heard and of whose responsibility, financial or otherwise, it knew nothing.

The bond in question provides "that we, M. R. Amerman, * * * as principal, and Globe Indemnity Company, a corporation * * * as surety, are held and firmly bound, unto the state of OklOhoma, in the penal sum of $412,829.49 * * * for the payment of which well and truly to be made we bind ourselves and each of us, our heirs, executors, administrators, successors, and assigns, jointly and severally, by these presents."

It will be observed that the precise wording of the bond refers to Amerman and the Globe Indemnity Company, "and each of us, our heirs, executors, administrators, successors, and assigns," so that Fuller & Company may properly be deemed a successor.

In the case of Illinois Surety Co. v. John Davis Co., 244 U. S. 276, which case involved the construction of a bond given pursuant to the federal statute requiring execution and delivery of bonds by contractors entering into contracts with the government for the construction of public works, it is said in the opinion:

"The argument that the surety's risk should not be increased by holding it liable for the default of a stranger to the original contract is of no greater force in the case of an assignee than it is in that of the subcontractor. A surety company could protect itself by insisting that the contractor require a bond from all subcontractors and assignees. The surety company was in no wise prejudiced by the transfer of the business, since the management remained unchanged; and no rule is shown for applying the rule of strictissimi juris."

Counsel for defendants discuss in their brief the question of whether this is an assignment or a subcontract, and the further question as to whether or not there is any distinction between the assignment and a subcontract, and the conclusion is drawn that where parties to the contract, without the knowledge or consent of the surety, as-

sign more than half of the work contemplated by the contract, as in this case, to a stranger, the surety should be released.

We think it sufficient to say that whether a part of Amerman's contract was assigned or sublet to Fuller & Company, the assignment thereof did not operate to discharge the surety on the statutory bond which it had given, and the bond remained for the protection of the materialmen furnishing material on the strength of the filing of such bond.

We do not think the materialmen were required to investigate and determine how the work was to be accomplished by the contractor; whether by his own employes or by subcontractors or assignees; but had a right to rely upon the statutory bond; and the surety, when it executed the bond, did so with the knowledge that materialmen would furnish material by reason of the filing of the bond; and further, that the knowledge of the State Highway Department of the subletting or assignment of the contract in question did not constitute knowledge on the part of the creditors furnishing material.

Furthermore, Fuller & Company were subcontractors of the principal contractor, Amerman, we think:

The record discloses that the Amerman contract covered all of Federal Aid Project No 53, sec. C., which comprised about 11 81 miles of concrete construction.

The contract with Fuller & Company, after reciting the fact of the execution by Amerman of the contract with the state of Oklahoma, and after reciting that said Amerman has employed and agreed with Fuller & Company to furnish and deliver all materials and perform all work on Oklahoma Federal Aid Project No. 53, sec. C., excepting the 5.81 miles adjacent to Okmulgee, Okla., and the grading and culverts on the six miles adjacent to Henryetta, Okla., then provides as follows:

"The party of the second part (Fuller & Co.) hereby covenants and agreed to furnish and deliver all materials and perform all of the work and labor as provided for in the contract heretofore referred to as having been made by the state of Oklahoma and M. R. Amerman, dated December 1, 1921, for the improvement of Oklahoma Federal Aid Project No. 53, sec. C., located in Okmulgee county, Okla., on and for the full distance of six miles adjacent to Henryetta, Okla., except all the grading, excavation, and culverts which has been let to, and is to be performed by, D. T. Allen and J. J. Harrison, partners, under the firm name of Allen & Harrison, of Oklahoma City, Okla."

Thus it appears that the contract covering the federal aid project in question covered more than 11 miles, and that six miles of the contract for constructing this road was sublet to Fuller & Company, excepting that the grading, excavation, and culverts for that particular six miles was let to other parties. In other words, Fuller & Company did not have a contract to construct in its entirety the six miles adjacent to Henryetta.

"The term 'subcontractor' has a well defined meaning in building contracts and used in its technical sense, it means one who takes from the principal contractor a specific part of the work." 9 C. J. 694.

As we understand the argument of counsel for defendants, if Fuller & Company are subcontractors, the principal and surety are liable for materials furnished and used in the construction of public improvements.

In the case of Lohr & Trapnell et al. v. H. W. Johns-Manville Co., 77 Okla. 6, 185 Pac. 526, it is said:

"Materials used in the construction of a public work, whether furnished under the contract directly to the contractor or to a subcontractor of a subcontractor to the contractor, must be deemed within the obligation of the surety company under a bond executed pursuant to sections 3881-3882, Rev. Laws 1910 (secs. 7486-7487, Comp. St. 1921), conditioned that the contractor make payments to the parties furnishing the same for all materials used in the work provided for in the contract and all labor performed on such work, whether by subcontractors or otherwise, in view of the manifest purpose of that statute to protect those whose labor or material has contributed to the prosecution of the work."

We think the judgment of the trial court should be affirmed.

Defendants in error in this case have asked for a judgment against the surety on the supersedeas bond filed herein in the event the judgment of the trial court should be affirmed, it appearing that judgment herein was superseded by a bond on which the United States Fidelity & Guaranty Company was surety. Judgment is therefore rendered against said surety on the supersedeas bond.

By the Court: It is so ordered.

Note.—See under (1) 18 C. J. p. 1171. (2) 36 Cyc. p. 876. (3) 38 Cyc. p. 1571.