## STANDARD ACCIDENT INSURANCE CO. v. BASOLO, Adm'r.

No. 25904. March 2, 1937.

Rehearing Denied June 8, 1937.

Tom G. Haile and MacDonald & MacDonald, for plaintiff in error.

Frank David McSherry, for defendant in error.

PER CURIAM. This case comes before this court on appeal from the district court of Pittsburg county by the surety company under a bond, executed to the state of Oklahoma, to cover the cost of construction

of a highway project in that county by the State. Highway Commission. The contract for construction of the roadway was awarded by the commission to S. O. Maxey & Company, a corporation, and in compliance with the statute for such cases provided, it executed a bond for faithful performance with the Standard Accident Insurance Company, as surety, in an amount equal to the total cost of the project.

The Maxey Company then entered into an agreement with one Massey, Lindsey & Gaasch, another corporation, whereby the latter was to furnish all of the sand to be used in the construction of the highway and to deliver it to the dock of the former company near the project. From that point it was carried to the mixing machines and then to the roadway by the Maxey Company. Massey, Lindsey & Gaasch employed certain laborers to dig the sand from its pits, wash and deliver it to the other company's dock, and at the end of each day it gave to each of the laborers a ticket showing the amount due him for the day's labor. A number of these tickets were taken up by and assigned to one Tony Basolo, either for cash, or exchanged for goods, wares and merchandise, in the total amount of $1,815,-37, of which the Massey, Lindsey & Gaasch Company paid the sum of $475, leaving a balance of $1,340.37 which it failed to pay.

After purchasing these tickets Tony Basolo died and John Basolo was duly appointed the administrator of his estate and brought an action for a money judgment in the amount due under those tickets, against Massey, Lindsey & Gaasch and the Standard Accident Insurance Company, the surety under the contractor's bond. The former did not defend the action and judgment was rendered against it for the full amount due, but the amount hereinbefore stated having been paid on the amount due, judgment was rendered against the surety company for the balance due thereon. From this judgment of the trial court, a jury having been waived by the parties, the defendant surety company appeals to this court.

This case must be decided strictly in accordance with the statutory provisions pertaining to the execution of a bond by the company to whom the contract was awarded for the faithful performance of its obligation and the protection of the state against all claims which might be made in construction of the project in question, and could be rather easily disposed of by a brief review of the statute in question and the language used therein, together with a review of the terms of the contract and the bond provided, if it were not for several questions raised by the plaintiff in error, the surety company, which merit consideration.

The statute in question is section 10983, of the 1931 Oklahoma Statutes, which provides that where a contract is made by a public officer of this state for any public project, the person with whom the contract is made shall provide a surety bond, "in a sum not less than the sum total in the contract, conditioned that such contractor, or contractors, shall pay all indebtedness incurred for labor or material furnished in the construction of said public building, or in making said public improvements."

The words "all indebtedness incurred for labor or material furnished" appear quite clear and should need no further interpretation or elaboration as to the legislative intent when the statute was enacted. They are simple and of common usage and have no double meaning, and there should be no question but that the surety company under its bond in statutory form, and there is no contention that it is not, guarantees the payment of all the costs for labor and material used in the completion of the project.

However, as stated, it raises two questions on appeal which it contends provide an exception to the wording of the statute and the intention of the Legislature in enacting it.

1. It is contended first by the surety company that the Massey, Lindsey & Gaasch Company, which furnished the sand, is not a subcontractor as defined by section 10977 of our statutes, but is a materialman, and that the relation created between S. O. Maxey & Company and Massey, Lindsey & Gaasch is only one of buyer and seller, since the sand was sold at a certain rate per square yard of pavement, and not one of contractor and subcontractor, and that such relationship is not included within the meaning of the statute.

Assuming that plaintiff in error is correct in its contention that the sand company was not a subcontractor, under one section of the statute, it is still confronted with the other horn of the dilemma in the form of the statute which says "all indebtedness incurred for labor and material furnished in the construction" must be taken into consideration. This alone would almost preclude it from asserting its contention further, but this court as well as other authorities has passed on the definition of **contractor.**

13 Corpus Juris, page 211, under "Contractor," says:

"The word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a specific piece of work, or job for other persons."

The Criminal Court of Appeals, in the case of In re Unger, 1 Okla. Cr. 222, at 225, 98 P. 999, in adopting the definition laid down in Brown v. German-American Title & Trust Co., 174 Pa. 443, 34 Atl. 335, and as defined in the Century and Webster's International Dictionary, says that a "contractor" is:

"One who contracts or covenants either with * * * a public body, or private parties, to construct works or erect buildings at a certain price or rate."

In the case of Ryndak v. Seawell, 13 Okla. 737, 76 P. 170, this court also held that a materialman under the intention of the statute in question should be considered as a subcontractor, or the purpose for which it had been passed would fail.

The definition in Re Unger, supra, was quoted with approval by the Circuit Court of Appeals in Arthur v. G. W. Parsons Co., 224 Fed. 47, 139 C. C. A. 511, and forms the basis of its definition that a "contractor" is one who contracts with another to furnish supplies, or construct works, or erect buildings, or to perform any work or service at a fixed price or rate.

The Colorado court, in the case of Stewart v. Talbott, 58 Colo. 563, 146 P. 771, at 776, defines a contractor as:

"One who, as an independent business, undertakes to do specific jobs of work without submitting himself to control as to petty details."

That court, in interpreting its statute which is quite similar in content to ours, further states that where a person, under an agreement, contracts to furnish materials, or perform any of the labor or services provided for in the statute, he would be a contractor by performing such services or labor.

Whether we look, therefore, to the strict interpretation of the statute in question, to the effect that any person furnishing labor or material in the construction of a public project shall be paid, whether denominated contractor, subcontractor, or by any other name, or whether we look to the definition of the word "contractor," as laid down by this and other courts, the position of the plaintiff in error that the sale of material at a certain rate per unit constitutes the relation of buyer and seller, which was not within the legislative intent of the statute, cannot be supported. There was sufficient evidence before the trial court to that effect to support its judgment, and it will not be disturbed.

2. The next contention of the plaintiff in error in seeking a reversal of the judgment of the trial court is that the surety under the statutory bond of the contractor, S. O. Maxey & Company, is not liable for the unpaid claims of laborers employed by what it terms "materialmen" (i. e. Massey, Lindsey & Gaasch, who supplied the sand) in the digging, washing and delivering of its own sand to the contractor. Its contention that this question, in so far as it expressly relates to the labor employed in producing the material, has never been before this court, may at first glance appear to be correct. But when a court holds, as this court has on several occasions, that the surety is liable for all material used in the construction of the project, does not the price of that material include the labor necessary to produce it, or to prepare it for the particular use in the project?

An early case before this court was Lohr & Trapnell v. H. W. Johns-Manville Co., 77 Okla. 6, 9, 185 P. 526, 528, in which the statute in question is given the following construction:

"The bond given, pursuant to the statute, for public works requires that the contractor, or contractors, shall pay all indebtedness incurred for labor or material furnished in the construction of public buildings and in making public improvements."

And the court further says that:

"It is clear to us that it was the intent of the Legislature to protect all people who furnished labor and material in the construction."

This rule was upheld in the later case of Amerman v. State, 111 Okla. 174, 239 P. 146, in which this court says that the surety bond extends to all materials which may be used in the work provided for in the contract, and that all labor performed on such work, whether by subcontractors, or otherwise, in view of the manifested purpose of the statute to protect those whose labor or material has contributed to the prosecution and completion of the project, must also be included thereunder.

The latest case in which this court has expressed itself on that subject is Tway v. Thompson, 160 Okla. 279, 16 P. (2d) 76, in

which it held that under the provision of the statute the surety on a builder's bond is liable for all material furnished to the contractor, or subcontractor, which is used or consumed in the course of construction of the project. It follows and quotes the ruling of the Kansas court, in construction of its statute from which ours was adopted, that the surety bond required of the contractor is to "pay all indebtedness incurred for labor and material furnished and used in and about said contract work."

It has been the universal rule for some time that in the construction placed upon mechanics' and materialman's liens, the former is considered as the superior lien and rightly so, and the materialman's is secondary to it. If, then, the courts look with favor upon the rights of the materialman to be protected under the surety's bond for his material, is not the laborer even more worthy of his hire in putting his labor upon that material and in need of at least equal protection? There should be no question as to that.

But this court takes that view in the case of Fuller v. Brooks, 117 Okla. 252, 246 P. 369, and assumes there could be no question about the surety being liable for labor expended in the preparation of materials used for public improvements. In holding that the bond, as provided by statute, was liable for all materials furnished to the contractor, or subcontractor, in the building of highways under a contract with the State Highway Commission and used in, or consumed in the course of construction, this court said (117 Okla. 254):

"The defendants, no doubt, would admit liability for labor expended in preparing and shaping the material on the ground, which was used in the improvements. Likely the defendants would make no distinction between liability for labor expended in preparing materials for use on the ground and preparing such materials at a distant place for use. Recovery has been allowed for the cost of the labor in preparing stone at the quarry for use in making a public improvement. [Citing U. S. Supreme Court case.] It is necessary to use labor and conveyances in transporting materials prepared at the quarry to the place where the improvement is made. The use of labor for transporting and conveyances for transporting from the quarry to the place of the improvement are as necessary in the course of the construction of the public improvement as the labor required to place the material in the public improvement. Therefore, recovery has been allowed for labor expended in transporting the material to the place where it is to be used in the public improvement and for rental on cars, track and equipment used in the transportation of the material. The courts have heretofore held the builder's bond liable for the value of such items. [Citing further U. S. Supreme Court case.] The defendants cannot escape liability on the builder's bond for materials expended and used indirectly for the creation of the public highway. The defendants will be held for materials indirectly used and furnished in the course of construction as fully as if the material had been placed in the public improvements."

There are other cases cited by the defendant in error, which would support the holding of this court, especially the case of Utah Construction Co. v. United States, etc., 15 Fed. (2d) 21, but in view of the foregoing authorities in which this court has consistently followed the rule expressed, no further outside authorities are considered necessary. The judgment is affirmed.

Our attention is called to the fact that a copy of the supersedeas bond is contained in the record, and on application of the defendant in error, judgment is hereby rendered against the surety, Fidelity & Deposit Company, for the amount of the judgment, interest and costs, for which let execution issue out of the trial court.

The Supreme Court acknowledges the aid of Attorneys Bruno H. Miller, Wallace Robertson, and John W. Hayson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Bruno H. Miller and approved by Mr. Robertson and Mr. Hayson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted, as modified.

OSBORN, C. J., and RILEY, WELCH, PHELPS, and HURST, JJ., concur. BAYLESS, V. C. J., and BUSBY, CORN, and GIBSON, JJ., dissent.