**YELLOW PINE LUMBER CO., INC., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and A & W Lumber Co., Defendants.**

**No. CIV–87–681–T.**

United States District Court, W.D. Oklahoma.

May 5, 1988.

Richard L. Farris, Frates & Farris, Oklahoma City, Okl., for plaintiff.

Patrick Brown, Clyde A. Muchmore and Karen Eby Friedemann, Crowe & Dunlevy, Oklahoma City, Okl., for defendants.

ORDER

RALPH G. THOMPSON, Chief Judge.

This matter is before the Court for consideration of the Motion for Summary Judgment filed by the defendant Insurance Company of North America ("INA") and the Motion for Partial Summary Judgment filed by the plaintiff, Yellow Pine Lumber Co., Inc. The parties have responded to each other's motions, and the issues raised are ready for determination.

This case arises out of the City of Edmond's awarding of a contract for the construction of the Arcadia Lake Ground Storage Reservoirs to Preload Technologies, Inc. ("Preload"). As a condition to the award of this contract, Preload procured a payment bond as required by Okla.Stat. tit. 61, § 1. This bond, denominated Statutory Bond No. KO2298508, was issued by the defendant INA.

After being awarded the contract, Preload ordered lumber for the Arcadia Lake project from the defendant A & W Lumber Company ("A & W"). In turn, A & W ordered some of this lumber from the plaintiff, Yellow Pine.

Yellow Pine filed this action to recover some $21,312.36 from A & W for the lumber and other materials that it furnished for use in the Arcadia Lake project. Yellow Pine alleges that the defendant INA is also liable for this sum under the terms of the Statutory Payment Bond procured by the contractor, Preload.

INA now moves for summary judgment on the grounds that Yellow Pine's claim is not within the coverage of the subject bond. In response, Yellow Pine has moved for partial summary judgment, arguing that its claim is covered by the bond and that, because there is no genuine issue of material fact as to A & W's liability on three of the four invoices referred to in the

Complaint, summary adjudication is warranted.[1]

Both motions are based upon Okla.Stat. tit. 61, §§ 1 and 2, which set forth the required terms of bonds covering public works projects and the procedures to be followed in filing actions on such bonds.

Okla.Stat. tit. 61, § 1 provides (in part): The bond or irrevocable letter of credit shall insure the proper and prompt completion of the work in accordance with the contract and shall insure that the contractor shall pay all indebtedness incurred by said contractor, his subcontractors, and all materialmen for such labor, material, and repair of and parts for equipment as are used and consumed in the performance of said contract.

Okla.Stat. tit. 61, § 2 provides (in part): Any person to whom there is due any sum for labor, material or repair to machinery or equipment, furnished as stated in the preceding section, his heirs or assigns, may bring an action on said bond for the recovery of said indebtedness, provided that no action shall be brought on said bond after one (1) year from the day on which the last of the labor was performed or material or parts furnished for which such claim is made. Provided, however, that any person having direct contractual relationship with a subcontractor performing work on said contract, but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond only upon giving written notice to said contractor and surety on said payment bond within ninety (90) days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material or parts for which such claim is made....

INA contends that the "proviso" of section 2, which requires persons who have a direct contractual relationship with a subcontractor but not with the contractor to notify the contractor before bringing suit, precludes persons not having a direct contractual relationship with the contractor or a subcontractor from recovering on bonds for public works projects. According to INA, since Yellow Pine had a direct contractual relationship only with A & W Lumber, and since A & W Lumber was a supplier and not a subcontractor, Yellow Pine is not entitled to bring the instant action.

INA's argument is based upon *Clifford F. MacEvoy Co. v. United States, for the Use and Benefit of Calvin Tomkins Company,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). There, the Supreme Court held that persons who do not have a direct contractual relationship with the contractor or a subcontractor may not recover on bonds issued under the Miller Act, 40 U.S. C. § 270a, et seq. Although the Miller Act governs public works projects of the federal government and not such projects undertaken by the State of Oklahoma, INA maintains that, because of the similarity in the language in the Miller Act and Okla.Stat. tit. 61, §§ 1 and 2, the reasoning of *MacEvoy* should be applied to bar Yellow Pine from bringing suit on the subject bond.

An analysis of INA's argument requires comparison of the language of the Miller Act and Okla.Stat. tit. 61, §§ 1 and 2. With regard to the procedures to be followed by the parties not having a direct contractual relationship with the contractor, the language of the Miller Act, set forth in 11 U.S.C. § 270b, is nearly identical to the language of Okla.Stat. tit. 61, § 2. The only differences concern the manner of service of notice on the contractor.

However, the section of the Miller Act concerning the scope of the bonds issued under it, 40 U.S.C. § 270a, does contain certain differences from the analogous Oklahoma provision, Okla.Stat. tit. 61, § 1. 40 U.S.C. § 270a(a)(2) requires "A payment bond with surety or sureties ... for the protection of all persons supplying labor and material in the prosecution of the work

---

1. The three invoices on which Yellow Pine seeks to recover are Invoice Number 2642–B for $6,441.12, Invoice Number 3010–B for $6,480.00, and Invoice Number 3011–B for $6,531.84.

provided for in said contract for the use of each such person." The Miller Act provision does not state, as does Okla.Stat. tit. 61, § 1, that the bond "shall insure that the contractor shall pay all the indebtedness incurred by said contractor, his subcontractors, and all materialmen for such labor, material, and repair of and parts for equipment as are used and consumed in the performance of said contract."

INA contends that the above-quoted language of 40 U.S.C. § 270a(a)(2) is as expansive as the corresponding language of Okla.Stat. tit. 61, § 1. The Court does not agree. Although the Miller Act provision states that it is for the protection of all persons supplying labor and materials, it does not specify that the bond is to insure the indebtedness of all subcontractors and all materialmen, as does Okla.Stat. tit. 61, § 1. This portion of section 1 was added in 1983. (Before then, section 1 stated only that the bond should insure the indebtedness incurred by such "contractors or their subcontractors who perform work in the performance of such contract.") The Court finds that the 1983 amendment to section 1 evinces a legislative intent to include materialmen within the protection of bonds issued under it.

INA anticipates this finding by contending that such a reading of section 1 renders it inconsistent with section 2. According to INA, the fact that the Oklahoma legislature did not amend the proviso of section 2 indicates that it intended to limit actions on bonds to those parties having a direct contractual relationship with a contractor or a subcontractor.

The Court does not find this argument persuasive. According to INA's interpretation, the 1983 amendment to section 1 would be of no effect. Under established principles of statutory interpretation, however, the statute should not be read to render one part of it inoperative. *Mountain States Telephone and Telegraph Co. v. Santa Ana*, 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985).

INA further contends that if Okla.Stat. tit. 61, § 1 is interpreted to cover all indebtedness of materialmen, even those not having direct contractual relationships with a subcontractor, then the proviso of Okla. Stat. tit. 61, § 2 will be rendered meaningless. The Court does not agree, for this argument is based on the Supreme Court's narrow reading of the term "subcontractor" in *MacEvoy, supra.*

In *MacEvoy*, 322 U.S. at 108–09, 64 S.Ct. at 894, the Supreme Court found that the term "subcontractor" was used in the Miller Act in its "more technical meaning, as established in the building trades." Thus, it concluded that, in the Miller Act, "subcontractor" referred to "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." *Id.* at 109, 64 S.Ct. at 894. It rejected the broader definition ("anyone who has a contract to furnish labor or material to the prime contractor"), on the grounds that the legislative history of the Miller Act revealed that Congress intended to distinguish between subcontractors and materialmen. *Id.* at 109–10, 64 S.Ct. at 894–95.

In contrast to this narrow reading, Oklahoma courts have interpreted the term "subcontractor" broadly, to include those individuals commonly designated materialmen. Thus, in *Standard Accident Insurance Co. v. Basolo*, 180 Okl. 261, 68 P.2d 804, 806–07 (1937), the Supreme Court of Oklahoma held that, under an earlier version of Okla.Stat. tit. 61, § 1, a materialman should be considered a subcontractor. It concluded that the assignee of a laborer who worked for a company that had agreed to supply sand to the contractor of a highway project could recover on a bond issued under Okla.Stat. tit. 61, § 1.[2]

*Basolo* has been cited approvingly by later courts. *See, e.g., City of Purcell v.*

---

**2.** INA has cited cases that have adopted the narrower interpretation of the term "subcontractor." *See, e.g., Welling v. American Roofing and Sheet Metal Co., Inc.*, 617 P.2d 206 (Okla.

1980); *Limb v. Limb*, 195 Okl. 249, 156 P.2d 1013 (1945). These cases, however, do not concern the use of the term in the statutes governing bonds on public works projects.

*Merco Manufacturing, Inc.*, 324 F.Supp. 210 (W.D.Okla.1971); *Hydro Conduit Corporation v. American–First Title and Trust Co.*, 808 F.2d 712 (10th Cir.1987). Although *Basolo* did not construe Okla. Stat. tit. 61, § 2 (which was added in 1968), its reasoning suggests that the use of the term "subcontractor" in that statute should not be interpreted as narrowly as the same term was interpreted in the context of the Miller Act.

In the case at bar, under broader definition of the term, A & W Lumber would be deemed a subcontractor. Since Yellow Pine had a direct relationship with A & W, the proviso of Okla.Stat. tit. 61, § 2 would not preclude Yellow Pine from bringing an action to recover on the bond. This broad interpretation of the term "subcontractor" in the proviso of section 2 gives effect to both the 1983 amendment of section 1 and to the proviso itself.

This interpretation is further strengthened by the Tenth Circuit's decision in *Hydro Conduit, supra.* There the Tenth Circuit held that a bond issued pursuant to Okla.Stat. tit. 11, § 47–114 (pertaining to improvements of municipal subdivisions) covered a claim brought by a supplier of materials who had not dealt directly with the first-tier subcontractor. The Court relied on the provision of the statute that stated that the bond should cover "all materials and labor entering into the construction of the improvements." 808 F.2d at 714. The court cited the decision in *Basolo* and reasoned that Okla.Stat. tit. 11, § 47–114 was enacted to protect third-party laborers and materialmen. *Id.* at 715–16.

The statutes at issue in the case at bar, Okla.Stat. tit. 61, §§ 1 and 2, were similarly enacted to protect laborers and materialmen. *American Casualty Co. v. Town of Shattuck*, 228 F.Supp. 834 (W.D.Okla. 1964). The 1983 amendment to section 1 further evinces this purpose. Given this purpose and the plain language of section 1 stating that the bonds issued under it are to insure the indebtedness of *all* materialmen, regardless of their place in the chain of construction, the Court finds that Yellow Pine may recover under the subject bond,

even though it dealt directly only with A & W Lumber, which was not a subcontractor within the technical meaning of that term.

Accordingly, the defendant INA's Motion for Summary Judgment is denied. Further, as it has supplied documentation of the amount owed to it on three out of the four invoices on which it has brought suit, the plaintiff Yellow Pine's Motion for Partial Summary Judgment is granted.