## FEDERAL SURETY CO. v. ST. LOUIS STRUCTURAL STEEL CO.

No. 15440—Opinion Filed June 9, 1925.

Rehearing Denied Sept. 8, 1925.

**1. States—Suretyship—Liability to Materialman on Bond for Public Building.**

A materialman who furnishes "shopworked" material, pursuant to an agreement with the contractor, for use in the building of a public structure, is entitled to recover for the value of the same pursuant to the contract of sale, between the contractor and materialman, on the builder's bond, executed and delivered to the state of Oklahoma under the provisions of section 7486, Comp. St. 1921.

**2. Same—Separate Action Against Surety.**

The liability of the principal and surety on the builder's bond executed and delivered to the state of Oklahoma, pursuant to section 7486, is joint and several, and a separate action may be maintained by the materialman against the surety upon the undertaking.

**3. Same—Recovery Sustained.**

Record examined; held, to support judgment in favor of the materialman on the bond.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 6.

Error from District Court, Oklahoma County; Albert C. Hunt, Assigned Judge.

Action by St. Louis Structural Steel Company for debt against the Federal Surety Company on builder's bond. Judgment for plaintiff, and defendant brings error. Affirmed.

Harris, Spielman, Thomas & Harris, for plaintiff in error.

Ames, Lowe, Richardson & Cochran, for defendants in error.

Opinion by STEPHENSON, C. The St. Louis Structural Steel Company commenced its action against the Federal Surety Company on a builder's bond, for bridge material sold and delivered to V. O. Mathews, a contractor. The trial of the cause resulted in judgment in favor of the plaintiff. Defendant has perfected its appeal and assigns the following errors for the reversal of the cause: First, error of the court in overruling demurrer to plaintiff's petition; second, error of the court in overruling defendant's demurrer to plaintiff's evidence; third, error of the court in refusing to make V. O. Mathews, the contractor, and principal in the bond, a party defendant.

The board of county commissioners of Lincoln county entered into a written contract with V. O. Mathews, whereby the latter bound himself to construct certain steel bridges for the county. V. O. Mathews executed and delivered a builder's bond to the state of Oklahoma, pursuant to section 7486, Comp. St. 1921. The Federal Surety Company became a surety upon the bond for the faithful performance of its conditions.

V. O. Mathews entered into a written contract with the steel company to fabricate one of the steel bridges for the contractor. The contract provided that shipment should be within 30 days from receipt of the approved drawings, terms to be 60 days, net.

The obligation of the steel company under the contract was to furnish the steel necessary for "Bridge C," fabricate the steel, fashion the same into a bridge, and ship to the contractor at Midlothian, Okla. An answer to a question directed to a witness of the plaintiff explains what is meant by fabrication of a steel bridge, the answer being in the following language:

"The St. Louis Structural Steel Company took the steel as it came from the mills and cut it to the proper lengths, fitted it and drilled it, put it together and fastened it in the shape of the bridge and riveted it together for bridge 'C'."

The plaintiff fabricated the steel bridge and shipped it to the destination designated by the contract. The bridge was unloaded from the railway cars upon the right of way, at a point about 150 yards from the location where the plans and specifications designated that the bridge should be situated. Bridge "C" was one of the several bridges which Mathews contracted to build in Lincoln county. Certain litigation was commenced between the contractor and board of county commissioners, during the process of the completion of the several bridges. Certain taxpayers intervened in the causes, which were finally settled and compromised. It appears that Mathews took judgment against the county for some of the bridges which were completed and for the steel involved in this action. It appears that the steel fabricated and shipped to the contractor for bridge "C" was lying on the ground, where it was unloaded from the cars, at the time judgment was taken by Mathews against the county for the bridges and steel, and was there on the ground at the time this action was tried.

The surety company makes the following point: That the materialman in this case

cannot recover upon the builder's bond for the reason that the fabricated bridge did not find its way into a completed structure upon the site provided for by the plans and specifications.

The disposition of the question as made by the surety company depends upon the construction to be placed upon section 7486, supra, and the conditions of the bond as sued on in this action. Section 7486, supra, is in the following language:

"Whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars, with any person or persons, for the purpose of making any public improvements, or constructing any public buildings or making repairs on the same, such officer shall take from the party contracted with, a bond with good and sufficient sureties to the state of Oklahoma, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

The conditions of the bond sued on in this action are in the following language:

"Now, therefore, if said principal shall well and truly pay or cause to be paid all sums of money due or which may hereafter become due for any and all labor and material employed and used in the construction of said work under said contract then this obligation shall be void; otherwise to remain in full force and effect."

The provisions of the statutes refer to that indebtedness incurred for labor and material furnished in the construction of a public building. The condition of the bond refers to labor and material employed and used in the construction of the public building involved in this case. There can be but little difference, if any, between the phraseology of the statutes and that of the bond sued on.

The phrase "furnished in the construction of said building," as used in the statutes, is not substantially different from the phrase "in the construction of said work under said contract," as used in the condition of the bond sued on. The phrase, as used in the condition of the bond and last referred to, has reference to the construction of the bridge according to the contract entered into between the contractor and the board of county commissioners. The particular point made by the plaintiff in error in this respect is that the material must be used in a completed structure in order to give the materialman a right of action on the builder's bond. Neither the statutes nor

the condition of the bond expressly provide that the material should be used in a "completed structure."

The main principle supporting a mechanic's lien for material sold and delivered to the contractor, as against the owner of the structure, is that the owner has set in operation a contract for an improvement which results in enhancing the value of his premises. Although there is a lack of privity of contract between the owner of the premises and the materialman who furnished material to the builder, under a contract with the latter, it is said that the benefits accruing to the owner, through the enhancement of his premises, will support the lien against his premises. The right of action between the materialman who furnishes material to the contractor as against the owner of the premises, does not rest upon a contract with the owner. The owner is held to liability on the mechanic's lien filed by the materialman upon the principal that he has willingly accepted the value of labor and material in the enhancement of his premises, and ought to answer for the value thereof to the person contributing to his enrichment.

The surety company has cited the cases of Pittsburg Plate Glass Co. v. Leary (S. D.) 126 N. W. 271, Fuller v. Ryan (Wash.) 87 Pac. 485, and Shultz v. Quereau County (N. Y.) 104 N. E. 621, to support its contention that the material and labor must be used in the building. These were cases involving the right of the materialman to a lien as against the owner of the premises.

The structure involved in this case is a public building, and a mechanic's lien would not run against the structure under any circumstances. The owner is not concerned in the question of whether the materialman receives compensation for material furnished. The bond in this case represents a contract between the surety company and the state of Oklahoma for the benefit of third parties. The consideration which moved the surety company to enter into the contract in this case was the premium it received for undertaking to guarantee the performance of the builder's contract on the part of the contractor. There is no privity of contract between the surety company and the owner. Our statute authorizes the execution and delivery of contracts for the benefit of a third party, and the surety bond involved in this might have been executed in the same form and for the same purposes, in the absence of a statute. The considerations which support the surety bond are entirely different

from those considerations which support a mechanic's lien against the owner for material sold and delivered to the contractor. It would not appear that cases involving the conditions which support a mechanic's lien would be helpful in determining the construction which ought to be placed upon the statute and bond involved in this case, for the reason that the bond rests upon different conditions.

The court will consider the situation of the parties, the subject-matter, and the purposes to be effected by the surety contract, in arriving at the intended meaning of the parties as expressed by the written contract. When the intentions of the parties are determined, as expressed by the contract, then such contract will be strictly applied within its meaning. This rule does not mean that the court should take a restricted view of the conditions moving the parties in entering into the contract—a restricted view of the purposes to be effected by the contract. When the purposes and intentions of the parties are ascertained, the contract should be strictly confined to the intentions of the parties. Klein v. Beers, 95 Okla. 80, 218 Pac. 1087.

All parties concerned in the contract for the construction of the bridge, and in the making of the surety contract, must have known that the bridge was to be fabricated by the steel company at its shop; that after the bridge was fabricated and fashioned into the desired structure, it was to be shipped to its destination, for placement, according to the plans and specifications. The steel company virtually completed the bridge at its plant before it was shipped to the contractor. The principal expense of the structure was involved in the cost of the material and its fabrication. There was little left for the contractor to do, except to place the structure upon its foundation, and floor the same. The answer as given by one of the officers of the company indicated that the structure was completed at the fabrication plant. The same legal rights accrued in favor of the steel company, in the fabrication of the bridge at its plant, as if the steel had been cut and riveted into a bridge at the site. U. S. Fidelity & Gty. Co. v. U. S. ex rel. Bartlett, 189 Fed. 339; U. S. For the Use of Hill v. American Surety Co., 200 U. S. 197.

The rights of the steel company in this case are the same as if it had fabricated the steel and fashioned it into a bridge on or near the site. The steel company had performed all services for a completed structure, according to the plans and specifica-tions, except the placement of the bridge, and flooring the same. The plaintiff performed its contract fully in all respects. The contention of the surety company amounts to the assertion that the plaintiff would not have been entitled to recover in this case if it had fabricated the steel and fashioned the same into a bridge upon the site designated, although the plaintiff had fully complied with its contract in every respect. The contention of the surety company is, in substance, that if the contract of the plaintiff had called for the fabrication of the bridge upon the site, and the work had been completed near the site, that the plaintiff could not recover upon the bond, unless the contractor had placed the same upon its foundation and floored it for the use of the public. To state the contention of the surety company affirmatively in this respect amounts to a negative answer to the proposition. The substance of the contention of the surety company is that the materialman cannot rely upon the bond until the fruits of his labor and material are in the structure, although the final placement of the structure upon its foundation is not within the control of the materialman. The materialman furnishing material and labor as involved in this case cannot know that the structure will be placed upon its proper foundation until the work has been completed; the materialman has no direction or control over the matter of the placement of the bridge. The materialman would be required to rely upon all parties complying with their part of the contract in shipping the material to a distant place, if it must be placed upon its foundation and completed before liability may accrue upon the builder's bond.

We think the purpose of the Legislature in the enactment of section 7486, supra, was to protect the materialman in the preparation of material, and in delivering material to the contractor, in all stages of the performance of the contract by the builder. A materialman would refuse to fabricate his material, and place the same in a bridge structure, and ship the same to a contractor, unless he was protected by the bond in accordance with his contract for the sale and delivery of the material to the builder.

It is sufficient for the materialman that a contract has been entered into between the owner and the contractor, and that the contractor has executed and delivered his builder's bond, according to section 7486, supra. The materialman is not called upon

to go farther than to ascertain that a builder's bond has been executed and delivered to the state, pursuant to section 7486, supra. If the materialman finds that the bond has been executed and delivered to the estate, he is then protected by the bond for labor and material furnished the contractor pursuant to a contract with the latter, in the course of the building of the structure, pursuant to contract with the owner.

The plaintiff in error makes the point that the plaintiff should have joined Mathews, the principal, in the builder's bond, with the surety company. V. O. Mathews, the principal, and the Federal Surety Company were jointly and severally liable upon the bond sued on in this action. The plaintiff was authorized to sue the parties severally or jointly on the bond. Section 222, Comp. St. 1921; Schowalter v. Beard, 10 Okla. 454, 63, Pac. 687; Thompson v. Grider Imp. Co., 36 Okla. 165, 128 Pac. 266; Prentice v. First National Bank, 101 Okla. 232, 224 Pac. 963.

It is recommended that the judgment of the court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 558. (2) 15 C. J. p. 561. (3) 4 C. J. p. 1129.