**EAGLE OIL CO. v. ALTMAN et al.**

No. 17425.   Opinion Filed Jan. 31, 1928.

(Syllabus.)

1. **Highways—Contractor's Bond for Public Improvement—Labor and Material Protected.**

Section 7486, C. O. S. 1921, requiring contractors engaged in making public improvements to execute bond for the benefit of persons performing labor or furnishing material in the construction of the public improvement, does not limit labor and material furnished to such as would be lienable under the mechanics' and materialmen's lien statutes.

2. **Same—Liability on Bond for Gasoline Furnished Subcontractor.**

Gasoline furnished to a subcontractor, to be used by him and his subcontractors in performance of a contract for the construction and improvement of a public highway, is material furnished in making such public improvement within Comp. St. 1921, section 7486, for which both principal and surety, under road contractor's bond given pursuant thereto, are liable.

Commissioners' Opinion, Division No. 2.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by the Eagle Oil Company against A. C. Altman and W. F. Rodgers, a copartnership, doing business under the firm name of Altman-Rodgers Company, and the United States Fidelity & Guaranty Company. Judgment for defendants, and plaintiff brings error. Reversed, and remanded.

Monk & McSherry, for plaintiff in error.

W. H. Fuller, Geo. M. Porter, and John L. Fuller, for defendants in error.

HALL, C.   This action was brought by the Eagle Oil Company, on a road contractor's bond, against A. G. Altman and W. F. Rodgers, and the United States Fidelity & Guaranty Company, for certain material furnished by plaintiff to one A. L. Martin, a subcontractor of the principals on the bond.

The defendants Altman and Rodgers were highway construction contractors, and had entered into a contract with one of the subdivisions of the state, Pittsburg county, to construct or improve a certain public highway in that county. The required statutory bond was executed by these contractors, with the United States Fidelity & Guaranty Company as surety. The bond was in the sum of $47,000. A portion of the work involved in the enterprise or project was sublet to other persons by Altman and Rodgers, the principal contractors. Among these subcontractors was one Martin whose subcontract was to haul and deliver shale at so much per cubic yard. He in turn sublet the greater portion of his contract to other persons, who were ready and willing to haul and unload shale at 45 cents per cubic yard. The shale was used in building the road. This hauling was done by means of trucks propelled by gasoline engines.

The plaintiff was a wholesale dealer in gasoline and motor oils, and during the execution of the contract, or during the time of making the public improvement or the construction of the highway, it (the plaintiff) sold and furnished to the subcontractor, Martin, gasoline and motor oil of the value of about $700, for the purpose of its being used in the prosecution of this work; that is, hauling the shale to go into and form a component part of the road.

This gasoline was first furnished in bar-

rels, but on account of the inconvenience of handling it in such containers, and for other objectionable features, the plaintiff installed a small pump somewhere out in the woods, or at an old mining camp presumably near the shale dump. This subcontractor, Martin, using an old abandoned store room of this mining camp, also kept some necessary groceries or a commissary, and sold these articles to his subcontractors, and, perhaps, to some extent to other perosns. In furnishing these subcontractors gasoline and articles from the store or commissary, tickets or invoices of the articles were made, and the purchaser signed the "tickets," which were then sent directly to Altman and Rodgers, the principal contractors, who were the paymasters in the enterprise. And in making payment to persons for hauling this shale, the principal contractors, Altman and Rodgers, deducted from the amount due for hauling, the commissary account and gasoline account, and retained same for the benefit of themselves or for the benefit of Martin. It is important to note that there amounts representing the gasoline consumed were actually collected and retained by the principals on the bond. It is to be observed, also, that the retail price was collected by the defendants Altman and Rodgers from these subcontractors, and not merely the wholesale price. This fact is mentioned because one of the defenses to this action was predicated upon the fact that these various subcontractors purchased the gasoline from Martin, and paid the retail price for the product, with the result that the defendants Altman and Rodgers collected too much money for the gasoline. We fail to see what bearing that has upon this controversy. Whatever effect, in point of fact, it might have, it inured to the benefit of the defendants, because by retaining the amount due for gasoline, the higher the price the less net amount they had to pay for the shale which went into the construction of the highway.

At the close of plaintiff's testimony, the defendants interposed a demurrer to the evidence, which demurrer was sustained by the court. The demurrer was sustained upon two grounds: First, the court thought that gasoline was material of too remote a character to come within the provisions of the statute which provides and fixes the limit of liability on the bond of the contractor engaged in making a public improvement. Second, it appears that the demurrer was also sustained upon the ground that the gasoline was furnished to the subcontractor instead of being primarily furnished to the

contractor of the lower degree; and further based his decision upon the fact that this subcontractor, Martin, sold the gasoline at a profit to his subcontractors.

At this juncture, it is but fair to say that, at the time this case was tried, this branch of the law was not as well developed as it is to-day, and there was ground, at that time, for the position that the furnishing of gasoline to a contractor, or subcontractor, was not protected by a bond of a contractor engaged in making a public improvement. However, in many of the states, and especially Oklahoma, this question has become definitely settled, and this particular article, to wit, gasoline, is protected by the bond. Fuller v. Brooks, 117 Okla. 252, 246 Pac. 369. In this case, the court, speaking on this particular question, said:

"The defendant will be held for materials indirectly used and furnished in the course of the construction as fully as if the material had been placed in the public improvements."

To the same effect is the recent case of Franzen v. Southern Surety Co., 35 Wyo. 15, 246 Pac. 30, in which case almost the entire branch of this law is discussed, and practically all of the decisions are either analyzed or classified.

Much of the hopeless confusion which has arisen in the decisions of the courts in determining the question of liability on the bond of a contractor engaged in making a public improvement, is due: First, to the nature of the subject-matter when the question involves articles and materials furnished indirectly, or entering indirectly into, the improvement; and, secondly, to the mistake of applying in all cases the same principles of law which govern the establishment of mechanics' and materialmen's liens.

The courts have labored with ease and uniformity in deciding that such articles as brick, lumber, cement, stone, steel, and energy representing manpower, which go directly into the structure, come within the provisions of the bond of a contractor engaged in making a public improvement. But the question of liability for such articles used and consumed in the execution of the enterprise or contract, such as gasoline for motor trucks, and incidental repairs on machinery, and, under certain circumstances, board for the men in camps, has baffled the courts, both state and federal. The reason for this is obvious. In passing beyond and cles and labor, which proximately relate to and enter into and form a component part of a structure, and then arriving at that

class of articles which have been converted into energy, and that energy has been expended, and has entered into the structure or used in the execution of the enterprise, we get into the realm of speculation. Once started it is difficult to stop, because the matter just ahead bears so close a relationship to that which has preceded that if it is not included there appears to be an arbitrary classification, which is a province of the Legislature rather than the courts.

There is a decided relationship between the law governing the establishment of a mechanics' and materialman's lien, and the law fixing liability on a bond of a contractor engaged in a public work, or constructing a public improvement; but the statutes have different objects, and cases involving mechanics' and materialmen's liens do not afford an unfailing criterion. In other words, liability on a bond of a contractor engaged in constructing a public improvement pursuant to section 7486, C. O. S. 1921, is not limited to labor and material furnished which would be lienable under the materialmen's and mechanics' lien law. Federal Surety Co. v. St. Louis Structural Steel Co., 111 Okla. 208, 239 Pac. 154; Franzen v. Southern Surety Co., supra; United States v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437.

As we have already said, we fail to see any legal distinction in furnishing this gasoline, for the purpose of its entering into the execution of this enterprise, to Martin, the contractor in the second degree, as was done in this case, and in furnishing it for the same purpose to his subcontractors or contractors in the third degree, provided that the gasoline in the form of energy actually found its way into the structure by having been used to create motive power to proximately contribute to the construction of this particular public highway. That question was settled by this court in the cases of Dolese Brothers Co. v. Andrecopulas, 113 Okla. 18, 237 Pac. 844; and Amerman v. State for Use of Bromide Crushed Rock Co., 111 Okla. 174, 239 Pac. 146. Under the ho'ding and rule announced in the case of Stevens Lumber Co. v. Kansas City Lumber Co. 72 Mo. App. 248, it would not affect the liability on the bond, if Martin, for his own use and benefit, had fraudulently disposed of the gasoline, provided that the gasoline later actually went into the execution of the contract, and in building the road. It is unnecessary in this case to either adopt that rule or reject it, because all of the facts in that case are not present in this. Liability here is much more pronounced. Altman and Rodgers collected for the gasoline, and not only collected the wholesale price, which the plaintiff is charging against the enterprise, but collected the retail price, and according to the evidence they kept it all except the sum oɪ $100 which they paid to plaintiff as a partial payment on this gasoline account. In this connection, in the case-made, we find this somewhat pertinent testimony:

"Q. Altman and Rodgers had no interest in the filling station? A. No, sir, they had no interest in it, but they got the benefit of the proceeds. Q. You mean to say they got the profits you made on the station? A. It was turned in against these men. Q. It was figured to your benefit? A. I don't know in what way. Q. Well, on the number of yards. You were paid on the number of yards? A. Yes, sir. Q. Whatever you had coming to you, they would give you a check for it? A. Yes, but I never had anything coming. Q. The trouble was you were losing money on the job, that was all, was it not? A. I reckon if I ever made any I lost it; I did not get it."

As an illustration of the point, board and lodging is not ordinarily allowed under the provisions of such bond; but, on the other hand, it has been held that such item is recoverable where it is shown that it was necessary for a contractor to maintain a boarding house at his camp, and where the value of the board was deducted from the wages of the men. Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703; Clatsop County v. Fidelity & D. Co., 96 Ore. 2, 189 Pac. 207.

In making these remarks, and citing the cases in support thereof, relative to the liability for board, under certain circumstances, is but illustrative of one of the points at issue in this case, and is no wise an attempt to adjudicate that question, or even to express in advance an opinion thereon.

The demurrer to the evidence in this case should have been overruled. Therefore, the judgment of the court below is hereby reversed, and the cause remanded for new trial.

BENNETT, JEFFREY, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 29 C. J. p. 612, §353; anno. 43 L. R. A. (N. S.) 162; 22 R. C. L. p. 632; 3 R. C. L. Supp. p. 1273; 4 R. C. L. Supp. p. 1473.