AMERICAN CASUALTY COMPANY, a corporation, Plaintiff,

v.

TOWN OF SHATTUCK, OKLAHOMA, a Municipal corporation, et al., Defendants.

No. 9544.

United States District Court
W. D. Oklahoma.

March 23, 1964.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for American Cas. Co.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for Harold Gouge, dba Security Const. Co.

James L. Bard, Minneapolis, Minn., for Lead Supplies, Inc.

Reynolds & Ridings, Oklahoma City, Okl., for Sherman Machine & Iron Works.

Rainey, Flynn & Welch, Oklahoma City, Okl., for Lone Star Steel Co.

Johnston & Johnston, Oklahoma City, Okl., for United Brick & Tile Co., Longbell Division of International Paper Co.

Hemry & Hemry, Oklahoma City, Okl., for Chicago Pump Co., W. S. Dickey Clay Mfg. Co.

Emmett A. Klem, Klem & Thomas, Shattuck, Okl., Maurice H. Merrill, Norman, Okla., for Town of Shattuck.

Priest & Belisle, McClelland, Collins, Sheehan, Fauss, Bailey & Bailey, Oklahoma City, Okl., for Alexander Myers & Associates.

Fagin & Fagin, Oklahoma City, Okl., for Karchmer Pipe & Supply Co.

DAUGHERTY, District Judge.

In this case the plaintiff as an Oklahoma statutory payment bond surety has sued several defendants, one, the Town of Shattuck, Oklahoma, as the owner of a municipal sewer construction project, another, Alexander, Myers & Associates, a co-partnership, as the engineer on the project, and the remaining defendants as unpaid creditors of the bonded contractor on such project.

When suit was originally filed, the plaintiff as the statutory payment bond surety had not paid the creditors named herein as defendants, but plaintiff has since elected to pay these creditors and thereby their presence in this litigation has been eliminated. Furthermore, the Court has heretofore sustained a Motion to Dismiss filed herein by the defendant Alexander, Myers & Associates, the engineer, the order of the court in this respect being set out in full as a footnote.[1] Thus, at this moment the controversy involves the plaintiff as the statutory payment bond surety and the defendant Town of Shattuck as the public entity owning the municipal project involved. The plaintiff will be hereinafter referred to as the Surety, and the remaining defendant, Town of Shattuck, as the Town or Owner.

The Town entered into separate contracts with Alexander, Myers & Associates, for engineering services, and with Harold Gouge doing business as Security Construction Company for construction services, both pertaining to a municipal sewer project in the Town of Shattuck, in

1. "ORDER SUSTAINING MOTION TO DISMISS OF DEFENDANT ALEXANDER, MYERS & ASSOCIATES.

"The Motion to Dismiss of the defendant Alexander, Myers & Associates is sustained.

"The defendant Alexander, Myers & Associates was the engineer on the project involved in this litigation. Under the constructural arrangements existing herein the engineer had the duty to make progress estimates but had no duty to ascertain or certify that labor and material bills were paid before making such estimates. Further, the plaintiff does not contend that the defendant Alexander, Myers & Associates assumed or undertook this duty.

"The cases relied upon by plaintiff to support its cause of action against the defendant Alexander, Myers & Associates as engineer are all founded upon contractual arrangements whereby the architect (or engineer) had the duty which he undertook to ascertain that labor and material bills were paid before certifying estimates or authorizing release of retainage funds. Palmer v. Brown [127 Cal.App.2d 44], 773 [273]

P.2d 306; Peerless Insurance Co. v. Cerny & Associates, Inc. (D.C.Minn. 61) 199 Fed.Supp. 951; National Surety Co. [, State for Use of] v. Malvaney [, 221 Miss. 190,] 72 S. [So.] 2d 424, 43 A.L.R. 2nd 1212 and Fort Worth Independent School District v. Aetna Casualty & Surety Co. [5 Cir.,] 48 F.2d 1. Such cases base liability of an architect (or engineer) to the surety on a duty coming from the contractual arrangements involved and accepted or undertaken by the architect (or engineer).

"There being no such contractual basis or duty here and there being no other duty or responsibility flowing from the engineer to the surety involved here the plaintiff has stated no claim or cause of action against the defendant Alexander, Myers & Associates upon which relief may be granted.

"It is therefore ordered that the Motion to Dismiss of the defendant Alexander, Myers & Associates is sustained and the complaint dismissed as against such defendant.

"Dated this 26 day of December, 1962.
Fred Daugherty
United States District Judge"

Ellis County, Oklahoma. Alexander, Myers & Associates will hereinafter be called the Engineer and Harold Gouge doing business as Security Construction Company will hereinafter be called the Contractor. The Contractor furnished a statutory payment bond mandatorily required by Title 61 Oklahoma Statutes Annotated, Sections 1 and 2, and also furnished a separate performance bond which is optional in Oklahoma but required by the Town on the project here involved. The plaintiff was the Surety on each of these separate bonds. The sewer project was completed by the Contractor and he has been paid the agreed amount for the same by the Town. The plaintiff as surety on the performance bond was not called upon by anyone to perform or complete the work agreed upon by the contractor. However, the Contractor did not pay all of his bills owing to laborers and materialmen and pertaining to this project. As stated above, the plaintiff as a statutory payment bond surety has now paid these bills and seeks herein to recover or be reimbursed for such payments from the Town or Owner.

The said construction contract entered into between the Town and Contractor, provided in part as follows:

"No money shall be paid on such monthly estimates until the Contractor shall have furnished proper vouchers showing all of said labor and the bills for all of said material to be fully paid;"

Under the said engineering contract the Engineer had the duty to make monthly progress estimates, which it did. But the Engineer had no duty under either contract (construction or engineering) to see that the Contractor paid his bills or furnished vouchers showing payment thereof, and the Engineer did not assume or undertake to perform such a duty. It was for these reasons that the Court sustained the Motion to Dismiss of the Engineer. In other words, there was no contractual responsibility or duty in this connection on the part of the Engineer, the Engineer did not in fact assume this responsibility by its conduct and this responsibility is not imposed upon the Engineer by law.

Under the evidence of this case it appears that the Town (and Engineer) did not require nor did the Contractor furnish proper vouchers showing the payment of all labor and material bills at any time during the construction period or at the time the final payment was made upon the completion of the project.

The plaintiff as statutory payment bond Surety contends herein that the above quoted provision of the construction contract was for its benefit with a resulting right in it to rely thereon and that the Town by failing to adhere to same impaired the Surety's rights of subrogation and exoneration under the statutory payment bond and is therefore liable for the damages or losses the Surety has sustained in its payment of labor and material bills. The plaintiff also appears to assert an alternate right of recovery on the basis of tort, in that the Town as the Owner became duty bound to the plaintiff as the Surety on the statutory payment bond by virtue of said contract provision not to pay monthly estimates until furnished vouchers showing all bills of the Contractor to have been paid and is guilty of negligence in the performance of said duty by not exercising ordinary or due care in fulfilling the same.

The Town contends that said contract provision is not for the benefit of the Surety on the statutory payment bond under Oklahoma law but is for the sole benefit of the Town and the said payment bond Surety had no right to rely upon the same; that the said Surety is not a party to the said construction contract and as a statutory payment bond surety no privity exists between the Surety and the Town; further that since the Town has no construction funds in its possession pertaining to the construction project involved, there is not now nor has there ever existed a right of subrogation or exoneration in favor of the payment bond Surety and against the Town.

At this point it is believed important to observe that whereas the plaintiff was the surety on separate performance and payment bonds furnished for this project its position in this litigation is necessarily based on and is limited to its rights, duties and obligations as a statutory payment bond surety. This is so because the bonds are separate and distinct and because the plaintiff has incurred no loss of any kind under the performance bond for the reason that its principal on said performance bond performed and completed the work covered thereby. Even so, it is necessary to consider the fundamental differences existing between the two bonds in view of the said construction contract provision involved and the cases urged on the Court by the parties as being decisive of this controversy.

 The obligation of a surety on a performance bond, upon default of the principal or contractor, is to perform or finish the work agreed upon or pay the owner the cost of performing or finishing the work. The obligation of a Surety on a payment bond is not to perform or finish the work or pay the cost of performing or finishing the work but is to pay any unpaid bills of the contractor or principal relating to the job. The nature of the two obligations is obviously distinct and different. This has eventually led to the general requirement for separate bonds to avoid confusion and indeed the Miller Act, for example, is *now specific in this requirement.* In Oklahoma the statutory payment bond is mandatory on public construction whereas a performance bond is optional to the owner. *The obligee of a statutory payment bond is the State of Oklahoma* whereas the obligee in a performance bond is the owner. It should be observed that the owner and the surety on a performance bond are both interested in the completion or performance of the work, and the monthly estimates and retainage provisions may be said to have a bearing on this mutual interest. However, in a public construction project where the owner has no contractual dealings with the laborers and materialmen of the contractor, and such laborers and materialmen cannot acquire liens on public buildings or lands, the owner has no concern or interest in the payment of the laborers and materialmen. The Oklahoma Supreme Court in Federal Surety Co. v. St. Louis Structural Steel Co., 111 Okl. 208, 239 P. 154 said:

"The structure involved in this case is a public building, and a mechanic's lien would not run against the structure under any circumstances. The owner is not concerned in the question of whether the materialman receives compensation for material furnished. The bond in this case represents a contract between the surety company and the state of Oklahoma for the benefit of third parties. The consideration which moved the surety company to enter into the contract in this case was the premium it received for undertaking to guarantee the performance of the builder's contract on the part of the contractor. There is no privity of contract between the surety company and the owner. Our statute authorizes the execution and delivery of contracts for the benefit of a third party, and the surety bond involved in this might have been executed in the same form and for the same purposes, in the absence of a statute. The considerations which support the surety bond are entirely different from those considerations which support a mechanic's lien against the owner for material sold and delivered to the contractor. It would not appear that cases involving the conditions which support a mechanic's lien would be helpful in determining the construction which ought to be placed upon the statute and bond involved in this case, for the reason that the bond rests upon different conditions."

The payment of such bills is then not in the mutual interest of the owner and the surety on the payment bond but is the

sole interest of the payment bond surety (with its principal, the contractor, of course), or those primarily and secondarily liable.

Moreover, the Oklahoma Supreme Court in Metropolitan Casualty Insurance Company of New York v. United Brick & Tile Co., 167 Okl. 402, 29 P.2d 771, has held that a retainage type provision in a construction contract to which the surety is not a party is for the benefit of the public owner and not for the surety company. The following expression is found in such opinion:

"Defendant surety company lays particular stress upon the fact that the specifications provided that the city could withhold payment of any of the funds and apply same in payment of claims for labor and material due on the job if bills on the contract were not paid. The contract provides:

" 'No moneys, payable under contract, or any part thereof, shall become due and payable, if the Commission so elects, until the Contractor shall satisfy said Commission that he has fully settled or paid for all materials and equipment used in or on the work and labor done in connection therewith, and the Commission, if it so elects, may pay any or all such bills, wholly or in part and deduct the amount or amounts so paid from any partial or final estimate.'

"The defendant surety company argues that it is a party to the above contract and by reason of the provisions thereof it acquired a lien on the funds paid on the contract to the extent that it had the right to demand that payments made on the contract would be used to pay labor and material bills on the contract. Such contention is without merit for the reason that the surety company is not a party to said contract and for the further reason that said contract was made for the benefit of the city and not for the surety company

and we are not herein dealing with funds in hands of the city."

■ Since we are here concerned only with the mandatory statutory payment bond, it is desirable to look to the Oklahoma statutes which require such a bond and to the construction, interpretation and effect of said statutes and bonds furnished thereunder as announced by the Oklahoma Supreme Court. These statutes, which are Title 61, Oklahoma Statutes Annotated, Sections 1 and 2, provide as follows:

"§ 1. Bond to be taken on public works.—

"Whenever any public officer shall, under the laws of the State of Oklahoma, enter into contract in any sum exceeding One Hundred Dollars ($100.00) with any person or persons, for the purpose of making any public improvements or constructing any public building or making repairs on the same, such officer shall take, from the party contracted with, a bond with good and sufficient sureties to the State of Oklahoma, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor, materials, and/or repairs furnished in the construction of said public building or in making said public improvements."

"§ 2. Filing of bond—Action on bond.—

"Such bond shall be filed in the office of the clerk of the district court of the county in which such public improvement is to be made or such public building is to be erected, and any person to whom there is due any sum for labor, materials, and/or repairs, furnished as stated in the preceding sections, or his assigns, may bring an action on said bond for the recovery of said indebtedness, provided, that no action shall be brought on said bond after six (6) months from the completion of said

public improvements or public buildings."

It must be conceded by all that these statutes were enacted by the Oklahoma legislature as a matter of public policy to afford protection to laborers and materialmen on public construction projects by giving them a payment bond to look to for their wages and materials since upon default of their contractor they have no contractual rights against the owner and no lien rights against the public land or improvements. Hutchinson v. Krueger, 34 Okl. 23, 124 P. 591, 41 L.R.A.,N.S., 315. It should be noted that a payment bond under these statutes runs to the State of Oklahoma as obligee and not to the public entity owning the property in this case; that the public entity involved has no duty as such to take such a bond but this requirement is placed on the individual public officer involved; that this bond is not filed with the public entity involved but is filed with the clerk of the State district court; and if default is made and laborers or materialmen are not paid, it is they, and not the public entity, who must take legal action against such bond.

■ The Oklahoma Supreme Court has had occasion to construe and interpret these statutes and payment bonds required thereunder on several occasions. This Court is bound by such interpretations. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487; Elmendorf v. Taylor, 10 Wheat 152, 6 L.Ed. 289. The Oklahoma Supreme Court has held that these bonds are not for the benefit of the public entity involved but are for the benefit of laborers and materialmen. In Wilson v. Nelson, 54 Okl. 457, 153 P. 1183, the Oklahoma Supreme Court said in connection with a payment bond required by the Oklahoma Statutes:

"The section of the statute in question was intended solely for the protection of materialmen and laborers dealing with contractors upon public works, and the conditions required to be inserted in the bond are

for the benefit of materialmen and laborers alone, and not for the benefit of the municipality making the contract."

Also, see Klein v. Beers, 95 Okl. 80, 218 P. 1087.

■■ Further, such a bond is a contract between the Surety and the State of Oklahoma for the benefit of third parties, namely, the laborers and materialmen and that there is no privity between the payment bond surety and the owner of the public property. Federal Surety Company v. St. Louis Structural Steel Company, supra. And, if the responsible public official fails to heed the statute and take such a bond in conjunction with a contract for public construction, nevertheless, the unpaid and unsecured laborers and materialmen may not look to or collect from the public entity involved. Frensley Bros. Lumber Company v. Scott, 117 Okl. 133, 245 P. 615, and Electric Supply Company v. City of Muskogee, 171 Okl. 130, 42 P.2d 140.

From the wording of the statutes and these interpretations, it becomes quite clear that the intent of the Oklahoma legislature was to protect laborers and materialmen on public construction by affording them a payment bond to look to but at the same time to very carefully divorce or insulate the public entity owner from any involvement in such payment bond or its procedural aspects.

■ It is also pertinent to recognize those rulings of the Oklahoma Supreme Court which hold that a statutory payment bond required by 61 Okl.St.Ann. § 1, may not be added to or subtracted from and that anything added may be rejected as surplusage and anything deducted is supplied by operation of law or by the statute. Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198; W. S. Dickey Clay Mfg. Co. v. Ferguson Investment Company, Inc., Okl., 388 P.2d 300; United States F. & G. Co. v. Cook, 105 Okl. 185, 231 P. 495 and New York Cas. Co. of New York v. Wallace & Tiernan, 174 Okl. 278, 50 P.2d 176. In other words, the statutory pay-

ment bond is treated as being separate and distinct and stands alone under the controlling statute.

With the nature of this statutory payment bond clearly brought in focus we must consider whether or not the surety on such a bond had a right to rely on the above quoted provision in the construction contract involved or if the rights of subrogation and exoneration on the part of a statutory payment bond surety are limited to the capture of actual construction funds in the hands of the public owner, in this case the Town. The United States Supreme Court has been in this area on several occasions, namely, in United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022; Prairie State Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity and Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; and Pearlman, Trustee v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190. But all of these cases deal with a situation where the public entity involved was in the position of a stakeholder or at least construction or retainage funds pertaining to the project involved were still in the hands of the public entity with the surety making claim there against, with others doing likewise, and before the release or payment of these funds by said public entity. In effect, these are in rem actions against earmarked construction funds in the hands of the public entity and not in personam actions against the public entity. No case from the United States Supreme Court has been presented nor has one been found in which rights of subrogation or exoneration have been upheld in a payment bond surety against a public entity not having specific construction or retainage funds in its possession.

The cases[2] relied upon by the plaintiff to carry this case into the field of an in personam action either involve a performance bond which, as has been noted, is materially different from a statutory bond or involve a bond under a state statute encompassing both performance and payment bond features or involve situations where construction or retainage funds have been captured by the surety in the hands of the public entity before release or payment or involve a state rule of law contrary to the rule in Oklahoma with reference to whether such a contract provision is for the benefit of a surety.

In Oklahoma it appears that a provision of the kind and nature found in the construction contract before us (as heretofore set out) and when the surety is not a signatory of such contract, is for the benefit of the owner and not for the benefit of the payment bond surety. Metropolitan Casualty Insurance Company of New York v. United Brick & Tile Co., supra. Certainly it is not for the benefit of the Contractor involved. Neither is it for the benefit of laborers and materialmen since they are afforded a statutory payment bond to which to resort for payment when their contractor defaults. The Oklahoma Supreme Court in Electric Supply Co. v. City of Muskogee, supra, said:

"The plaintiff in error (materialman) contends that there was a provision in the contract between the city of Muskogee and the contractor that the city would pay the contractor, subject to the proof of account for the material used and the work done, and proper showing made of the payment of all outstanding accounts, and that therefore all such bonds were made for the benefit of the materialman, that the city could be liable to the plaintiff in error (materialman) for the work done and material used by it if it violated the terms of its contract with the

2. Ft. Worth Independent School District v. Aetna Casualty & Surety Co., 5 Cir., 48 F.2d 1, 77 A.L.R. 222; Hochevar v. Maryland Casualty Co., 6 Cir., 114 F.2d 948; National Surety Corp., State for Use of v. Malvaney, 221 Miss. 190, 72 So.2d 424, 43 A.L.R.2d 1212 and Peerless Insurance Co. v. Cerny & Associates, Inc., 199 F.Supp. 951.

contractor in paying the said contractor before it had knowledge of the payment of all claims of materialmen against the contractor for work and material used in the construction of said improvement.
\* \* \*

"We think under the facts and the law of this state that the city of Muskogee is not liable in the plaintiff's (materialman) action, and that the judgment of the trial court should be affirmed."

Upon payment of such claims by the statutory payment bond surety it is true that such surety would then be subrogated to the rights of the laborers and materialmen. However, in United States v. Munsey Trust Co., supra, it was pointed out that one by subrogation can have no better position than the one to whose rights he becomes subrogated. If the rights of laborers and materialmen against a public entity are restricted to capturing funds in the hands of the public entity then such must be the rights of the surety by way of subrogation.

[12–14] The right of exoneration is basically the right of one secondarily liable to prevent a loss before it occurs by forcing the principal to avoid such a loss. Plaintiff does not seek to enforce this right against its principal, the Contractor, nor through its principal against funds in the hands of the owner or public entity involved, but claims this right against the public entity after it has released all construction funds with the effect to cause such public entity to pay twice, at least to a certain extent, for its public improvement. Considering the right of exoneration as a right in a performance bond surety to be discharged of liability for performance can be understood when the owner breaks a construction contract provision which affords some security to such a performance bond surety because the owner under a performance bond is the obligee of such bond and such a construction provision may conceivably be considered as being also for the benefit of the performance bond surety. But to exonerate or discharge a statutory payment bond surety from his statutory obligation to satisfy unpaid laborers and materialmen claims would be to completely defeat the purpose of the mandatory statutory payment bond law. No doubt the plaintiff recognized this when it proceeded to pay such laborers and materialmen. If thus there is no right of exoneration here then what the plaintiff really seeks is reimbursement. The statutes of Oklahoma provide that if a surety satisfies the principal obligation, the principal is bound to reimburse but the surety has no claim for reimbursement against other persons though they may have benefited by the act, except that a surety upon satisfying the obligation of his principal is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what has been expended. Title 15, Oklahoma Statutes Annotated, Sections 381 and 382 provide:

§ 381. Reimbursement of surety.—

"If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by this Act, except as prescribed by the next section."

§ 382. Surety's rights against principal and co-sureties.—

"A surety, upon satisfying the obligations of the principal, is entitled to enforce every remedy which the creditor then has against the principal, to the extent of reimbursing what he has expended; and also to require all his co-sureties to contribute thereto, without regard to the order of time in which they became such."

With reference to the alternate theory of plaintiff that recovery may be allowed herein on the basis of tort, such

theory is believed to lack merit in this case. To recover in tort there must be a duty owed to the plaintiff by the defendant and a breach of that duty to the detriment of the plaintiff. In Oklahoma, such a contract provision as we have involved herein, is not for the benefit of the plaintiff as a payment bond surety. Such being the case, no duty can arise therefrom and be owed by the owner to such a surety. There being no duty owed, there simply can be no tort upon which to base a right of recovery.

The Court therefore concludes that the construction contract provision here involved was for the sole benefit of the owner to be exercised by it in bringing about completion or performance of the work involved and was not for the benefit of the statutory payment bond surety under Oklahoma law; that the statutory payment bond stands unequivocally responsible, on a secondary basis behind the principal, for the payment of laborers and materialmen coming within its ambit; that short of capturing specific construction funds in the hands of the public entity owner which pertain to the construction project involved, neither the laborers or materialmen nor a payment bond surety by subrogation or exoneration may look to the public entity owner for payment or reimbursement of losses as any other conclusion would do violence to the public policy, laws and decisions of the State of Oklahoma and jeopardize the rights of public entities in Oklahoma in their public construction operations, and that under Oklahoma law no duty arose from the construction contract provision involved which was owed by the Town to the payment bond surety the breach of which would allow recovery in tort.

Accordingly, the plaintiff has not presented a claim upon which relief can be granted and its complaint against the remaining defendant, The Town of Shattuck, should be dismissed. Counsel for the Town will prepare a judgment to that effect for the signature of the Court and entry herein.