GIVOH ASSOCIATES & KZHB Associates, Plaintiffs,

v.

AMERICAN DRUGGISTS INSURANCE COMPANY & International Fidelity Insurance Company, Defendants and Third-Party Plaintiffs,

v.

VIDAR DRYWALL CORPORATION, Volvo Construction Co., Inc., Simeon Fensterheim, Diane Fensterheim, Stephen Schwartz, Sandra Schwartz, Lawrence Wecker, Peggy Wecker, Bernard Mondry, Alan Sherman, Barbara Sherman, Harry Alex Meltzer, and The Secretary of the United States Department of Housing and Urban Development, Third-Party Defendants.

No. 82–CV–0737.

United States District Court, E.D. New York.

May 5, 1983.

Postner & Rubin by William J. Postner, New York City, for plaintiffs.

Townsend, Rabinowitz, Pantaleoni & Valente, P.C., New York City by Francis Valente, Wolff & Samson by Gage Andretta, West Orange, N.J., for defendants and third-party plaintiffs.

Raymond J. Dearie, U.S. Atty., Eastern Dist. of N.Y. by Ben Wiles, Asst. U.S. Atty., Brooklyn, N.Y., for third-party defendant, HUD.

Wilson, Elser, Edelman & Dicker by James L. Fischer, New York City, for third-party defendant, Harry Alex Meltzer.

## DECISION AND ORDER

BRAMWELL, District Judge.

### BACKGROUND

This action, originally brought in State Supreme Court, began as a lawsuit by Givoh Associates ("Givoh") and KZHB Associates ("KZHB") against the defendants on a contractors' performance bond. Givoh and KZHB are limited partnerships, each of which is engaged in the rehabilitation of two separate buildings in Brooklyn, New York. Givoh is engaged in the rehabilitation of a building at 658 Montgomery Street and KZHB is engaged in the rehabilitation of a building at 349 Crown Street. The work was to be performed by two prime contractors, Vidar Drywall Corporation ("Vidar") and Volvo Construction Co., Inc. ("Volvo") each of whom was to perform work on both projects. In order to finance the projects, Givoh and KZHB entered into Building Loan Agreements with Huntoon Paige Associates, under which Huntoon Paige agreed to loan $1,214,000 for each project.[1] Givoh and KZHB agreed to pay off the loan according to notes endorsed by third party defendant, the United States Department of Housing and Urban Development (HUD) and secured by mortgages on the projects. On September 27,

1978, KZHB, both construction companies, and the two surety defendants, entered into a performance bond in the amount of $190,028. On October 3, 1978, Givoh, both construction companies, and the two sureties entered into a similar performance bond in the amount of $207,274.

By the terms of the Building Loan Agreements and pertinent HUD regulations, Huntoon would only release money periodically to either Givoh or KZHB pursuant to a certain procedure. Specifically, the parties were required to complete certain forms. In addition, the supervisory architect, third party defendant Alex Meltzer, was required to send Huntoon reports of all inspections he had made since the preceding disbursement. Following this, HUD would have to approve the forms and the title insurer would have to give notification of clear title. Only after all these steps were completed would money be disbursed.

Huntoon's disbursements to Givoh for the Montgomery Street Project proceeded on schedule until October of 1979. A requisition for funds was submitted to Huntoon on October 15, 1979. At that time, however, the title company discovered that taxes on the property were unpaid and so it would not give Huntoon notification of clear title. On December 6, 1979, after the taxes were paid and Huntoon received notice of clear title, Huntoon made the requested disbursement. On December 13, 1979, three liens were filed against the Montgomery Street Project. Accordingly, the requisition of December 13, 1979 was not paid until February 15, 1980 when the title company was satisfied that the record was clear. This was the last requisition ever submitted on the Montgomery Street Project.

Similarly, KZHB suffered several delays in the payments on the Crown Street Project. KZHB's disbursement request submitted on October 15, 1979 was not acted on until December 5, 1979 because HUD

---

1. Huntoon stipulated out of this case on November 23, 1982 after HUD was assigned the mortgage.

took over a month to process the request. The last requisition submitted by KZHB was delayed because liens were filed against the project. Huntoon finally received notification of clear title on February 15, 1980 and payment was made.

Thus, despite occasional delays, all of the disbursements for the Montgomery and Crown Street Projects were eventually made.

The Building Loan Agreements set November 27, 1979 as the date both projects were to be completed. However, construction was not completed until well into 1980. In addition, the March 1, 1980 interest payment on the building loans was not made to either Givoh or KZHB. Therefore, under the terms of the Consolidated Mortgage Notes, the building loans went into default on April 1, 1980. The loans were never reinstated. Subsequent to the defaults, on December 16 and 22, 1980, Huntoon assigned all of its right, title and interest in the Montgomery and Crown Street Projects to HUD.

The dispute which forms the basis of this action began when Volvo and Vidar allegedly defaulted in performing their obligations under the construction contracts. Givoh and KZHB thereafter demanded of the defendant co-sureties that they remedy the defaults and complete the work pursuant to the performance bonds. The sureties have already paid approximately $39,000 to certain subcontractors and materialmen who made claims under the payment bonds on these projects. The sureties did, however, refuse to pay for completion of the projects and the instant action thereafter ensued in the state court. It was subsequently removed to this court upon motion by HUD, one of the third-party defendants.[2]

There are several motions presently before the court. In the first, the defendant surety companies have moved to dismiss the plaintiff's complaint. This motion is based on the theory that Givoh and KZHB either improperly released contract funds or failed to make payments strictly in accordance with the terms of the performance bond agreements with the result that the sureties were released from all liability under the bonds.

The second motion is made by third party defendant Harry Meltzer, the architect on the projects, to dismiss the complaint against him.

The third party complaint against Mr. Meltzer brought by the sureties alleges that the sureties relied on his professional services to their detriment. In his motion to dismiss, Mr. Meltzer asserts that he had no relationship whatsoever to the sureties and thus owed them no duty.

The third motion is brought by third party defendant HUD to dismiss the complaint against it.

There is also a motion by the plaintiff for an order to sever and remand the main action to state court.

This opinion will deal basically with HUD's motion to dismiss since disposition of this motion will make consideration of the others unnecessary.

## THE HUD MOTION

HUD's first argument in support of its motion to dismiss is that the third party claim asserted against it is improperly asserted under Rule 14(a) of the Federal Rules of Civil Procedure. Rule 14(a) provides in pertinent part that "a defending party, as a third-party plaintiff, may cause

---

**2.** The other third party defendants involved in this case include Vidar and Volvo, the prime contractors, who are being sued for failure to complete the projects and for default in their payments to the subcontractors. Also present in this suit is architect Harry Alex Meltzer. The claims against Mr. Meltzer sound in negli-

gence and breach of duty for failure to adequately supervise the projects. The remaining third party defendants are officers of Vidar and Volvo who, it is alleged, signed indemnification agreements in connection with the issuance of the surety bonds in question. These third-party defendants defaulted on January 7, 1983.

a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Fed.R.Civ. Pro. 14(a). HUD argues that Rule 14(a) may only be used as a vehicle against a party who may be liable to a third-party plaintiff on precisely the same theory supporting the plaintiff's claim against that third party plaintiff. In other words, the third party plaintiff's theory of recovery over against third party defendant must be identical to the plaintiff's main claim. HUD points out that the plaintiff's claim against the sureties is based on the performance bonds while the sureties' claims over against HUD are based primarily on the loan agreement and a statutory trust fund theory. Thus, according to HUD, the sureties' claim is entirely separate and distinct from plaintiff's.

■ This argument seems to adopt an unnecessarily restrictive approach to Rule 14(a). Basically, Rule 14(a) is intended to permit a defendant to obtain relief from the true wrongdoer. As the Second Circuit noted in *United States v. Farr & Co.,* 342 F.2d 383, 386 (2d Cir.1965) indemnification is a tool for passing liability on to the ultimately responsible party. Taken in that vein, attempts to circumvent the doctrine by asserting pleading deficiencies based on varying theories used to support the primary and third-party claims would appear to run contrary to the liberal construction usually accorded to Rule 14(a) claims. Indeed, in *Wanta v. Powers,* 478 F.Supp. 990, (M.D.Pa.1979) the district court stated that Rule 14 actions are normally interpreted to allow claims even though they do not allege the same cause of action or the same theory of liability as the original complaint. *Wanta v. Powers,* 478 F.Supp. at 993 *citing* 3 Moore's Federal Practice § 14.07(1) I agree that this is the proper interpretation to be given a Rule 14 claim. Thus, the

theories advanced by the third party plaintiff are not the determining factor. If the third party plaintiffs prevailed on the merits, HUD would be required to reimburse them for money they have paid out to subcontractors, HUD would also have to pay the plaintiffs the money required to complete the projects, which the sureties are now being sued for. Thus, despite the difference in theories, HUD would be liable to Givoh and KZHB for part of the claim which Givoh and KZHB have asserted against the sureties. Accordingly, I hold that the third party claim is properly pleaded.

HUD's second assertion in support of the motion is that the New York Lien Law does not support the third-party claim. The sureties' third-party claim is based, in part, on the theory that the undisbursed mortgage funds held by HUD constitute a trust fund held for their benefit and represent the amount by which HUD has been unjustly enriched.

■ The applicable statute is N.Y. Lien Law § 70 (McKinney 1966). Specifically, section 70(5)(b) imposes a statutory trust on funds received by an owner, contractor or subcontractor for the benefit of those performing work on the contract.[3] In interpreting this section, New York Courts have consistently held that mortgagees, such as HUD, cannot become statutory trustees. In *ALB Contracting Co. v. York-Jersey Mortgage, Co.,* 60 A.D.2d 989, 401 N.Y.S.2d 934 (Fourth Dept.1978) the Appellate Division considered the question of whether a mortgagee on a building improvement loan, by withholding funds due the owner-contractor, became a statutory trustee. After noting that the statute does not specifically mention them, the court refused to expand the category of persons required to perform the extensive and burdensome duties imposed on a statutory trustee to encompass mortgagees. 60 A.D. 989, 401 N.Y.S.2d 935.

**3.** N.Y. Lien Law § 70 (McKinney 1966) provides in pertinent part. "The assets of the trust of which the owner is trustee are the funds received by him and his rights of action for payment thereof under a building loan mortgage."

Buttressing this interpretation of the statute is the N.Y. Statutory Construction Law § 240 (McKinney 1971) which states that in interpreting a statute "an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded." Because the Lien Law specifically includes certain classes as statutory trustees and is silent about mortgagees, there is no other logical inference than that mortgagees were never intended to be statutory trustees. Thus, the sureties' attempt to impose liability on HUD based on a statutory trust fund theory must fail.

■ The sureties next claim to be subrogated to the rights of Givoh and KZHB in any trust fund that might exist. Under the Lien Law, owners like Givoh and KZHB may become statutory trustees. The status of trust beneficiaries, however, is somewhat more difficult to attain. Pursuant to N.Y. Lien Law § 71(2)(4) (McKinney 1971) subcontractors and materialmen may become trust beneficiaries. Owners are not mentioned. By the terms of section 240 of the N.Y. Statutory Construction Law, *supra* since owners were omitted, this must be presumed to be the intention of the drafters. Therefore, owners may not be trust beneficiaries under the N.Y. Lien Law. There is nothing for the sureties to be subrogated to. Accordingly, this claim of the sureties against HUD must fail as well.

■ In addition to the trust fund theory, the sureties also claim that by paying the subcontractors and materialmen, they are entitled to be substituted to the position of Givoh and KZHB and to have the owner's rights against HUD. Their reasoning is that the owners were the ones ultimately responsible for the debts the contractors owed to their subcontractors. By satisfying these debts, the sureties argue, the owners are the ones who ultimately benefit, so they are the ones into whose shoes the sureties should step. However, this argument clearly runs contrary to the basic tenets of surety law. As one leading treatise in the field states, "It is universally recognized that the surety, upon paying the creditor, is entitled to be substituted to the creditor's position." L. Simpson, *Simpson on Surety* 206 (1950). Clearly, this subrogates the sureties only to the rights of the subcontractors who were the creditors here, not to the rights of Givoh and KZHB, the owner debtors. Accordingly, these allegations are dismissible on their face.

Finally, the sureties argue that they are entitled to undisbursed mortgage funds held by HUD on the theory of an equitable lien, that is a lien imposed by the court on specific funds, designed to prevent unjust enrichment. In support of this theory, the sureties cite several cases, the most important of which seems to be *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

In *Pearlman,* the defendant executed two surety bonds, one to guarantee performance of a government contract and the other to guarantee payment to laborers and materialmen on the job. Under the terms of that contract, the government was authorized to withhold a percentage of estimated amounts due monthly to the construction company, until final completion and acceptance of all work. In other words, every time a payment became due, the government retained a specified amount of that payment, disbursing the rest to the contractor. The government would hold this money aside pending the completion of the project. At that time, after the project was completed, the government would pay to the contractor this money it had been withholding. In the case the contractor failed to complete the work and the surety was compelled to step in and discharge the debts of the contractor for labor and materials. The surety sued to recover the money held by the government under the withholding agreement, which would have been paid to the contractor had it fulfilled its obligations. The court held that the surety was entitled to these funds proceeding on under the theory of an equitable lien. 371 U.S. at 141, 83 S.Ct. at 237.

While this Supreme Court decision is clearly authority establishing the equitable lien theory, it should be limited to its facts. The instant case is plainly distinguishable from *Pearlman* to the extent that *Pearlman* involved a fund made up of money withheld from monthly payments and unequivocally due the contractor upon satisfactory completion of its performance. In this case, by contrast, there was no such monthly retainage agreement which created such a fund. Each monthly payment was disbursed in full. There was no money withheld that belonged to the owners or the contractors. The only funds not disbursed by HUD here appear to be monies which were not then owed the contractors because of their default. This seems to me to be the key factor distinguishing this case from *Pearlman.*

The present case seems to be more analogous to that of *American Casualty Co. v. Town of Shattuck, Okla.,* 228 F.Supp. 834 (W.D.Okl.1964). In that case, a town contracted to have repair work done on the municipal sewer. The contract entered into between the town and the contractor provided that no money would be paid on the monthly estimates until the contractor furnished proper vouchers and the engineer made monthly progress estimates. There was no retainage provision as in *Pearlman.* All monies owed were disbursed until the contractor defaulted and the payments stopped. The surety sued to recover the undisbursed funds after it was compelled to satisfy the contractor's obligations. The court held that the surety was not entitled to the funds. 228 F.Supp. at 843. In so doing, the court distinguished *Pearlman* by noting that *Pearlman* involved a situation where retainage funds pertaining to the project involved were still in the hands of the public entity. 228 F.Supp. 841. The district court likened the situation before it

to an in rem action against already earned and earmarked construction funds, not an in personam action against the public entity itself. The court further noted that no case could be found in which the rights of a surety have been upheld against a public entity not having specific retainage funds in its possession. Id.

■ In light of all these factors, I agree that where, as in the instant case, HUD did not retain funds specifically earmarked under the contract, the surety has no right to any undisbursed mortgage funds.

Having found that none of the sureties attempts to impose liability in HUD have any grounding in the law, I am compelled to grant HUD's motion and dismiss it from this case.

## REMOVAL JURISDICTION

■ The present case was removed to this court by HUD pursuant to 28 U.S.C. § 1442(a) (1976).[4] This statute allows removal of a civil action involving an officer of the United States. There have been numerous cases discussing the result of dismissal of the federal defendant from such cases. Characteristic of these is *Herman Andrae Electric Co. v. Freiberg,* 332 F.Supp. 858 (D.Wis.1971) which held that upon dismissal of the federal defendant, it is within the discretion of the district court to remand the case to state court. Under the rule of *Murphy v. Kodz,* 351 F.2d 163, 168 (9th Cir.1965), the primary consideration in such a matter is the extent to which the federal court has committed its judicial resources to the case. After careful review of the docket, I note that most of the activity surrounding this case involves the four motions which have been made. Since remanding this case would obviate the necessity of deciding three of these motions, it is clear that this court has not at this time expended that amount of time and effort which would warrant keeping it. It is well within this court's discretion to remand this case to the State Supreme Court from

---

**4.** 28 U.S.C. § 1442(a) (1976) provides in pertinent part.

(a) A civil action ... commenced in a State court against any of the following persons may be removed by them to the district court

of the United States for the district and division embracing the place where it is pending:

(1) any officer of the United States or any agency thereof.

which it came and this it does today. Buttressing this conclusion is the fact that this case primarily involves interpretation of New York statutory law. This is a matter better left to the expertise of state courts.

## CONCLUSION

Accordingly, and in light of all of the foregoing, HUD's motion to dismiss is hereby GRANTED. Since this removes from the case the party which occasioned removal to this court, this case is hereby remanded to State Supreme Court.

IT IS

SO ORDERED.